## IN THE MATTER OF PETER M. MOCCO, AN ATTORNEY AT LAW.

Argued January 25, 1977—Decided January 12, 1978.

*Mr. Frank P. Addas* argued the cause for complainant Hudson County Ethics Committee.

*Mr. Joseph A. Hayden, Jr.* argued the cause for respondent (*Messrs. Nulty and Hayden,* attorneys).

PER CURIAM. The Hudson County Ethics Committee filed a presentment against Peter M. Mocco, a member of the bar of this State, finding him in violation of *DR* 1–102(A)(4) and (5) in that he did:

(a) Misrepresent to a representative of Mobil Oil that he was a partner in a certain gas station to obtain an easing of credit.
(b) Misrepresent to the Internal Revenue Service on form "Election by Small Business Corporation" that he was a shareholder (10 shares) of Petro Enterprises.
(c) Sign the names of Richard Carrero,[1] President, and Jack Duffy, Secretary, to a mortgage, without authorization and actual knowledge that such persons held these positions.
(d) Sign Joseph Mocco's name (his brother) as a Notary Public on an acknowledgment on a Mortgage Note.
(e) Prepare a New Jersey Sales and Use Tax Form to be signed by Joseph Guadara, President, when in fact he knew that Mr. Guadara was not president of Petro Enterprises.

We have reviewed the record and the exhibits and find that the Committee's findings are overwhelmingly supported by the evidence.

All of the respondent's difficulties arose out of his relationship with a Robert Overman. Subsequent to the respondent's admission to the bar in 1967, he became extremely active in municipal politics in the Township of North Bergen. In the course of that activity he met Robert Overman and during a particular election in 1969 in which respondent was a candidate, the two worked arduously and closely with each other. After the election, in which the respondent was defeated, Overman continued to devote much time and effort to the respondent's political activities and made his (Overman's) home available for those purposes.

In the Spring of 1970 Overman acquired a gasoline service station in Hawthorne, New Jersey. In June 1970 the respondent formed, on behalf of Overman, a corporation, known as Petro Enterprises, to own and operate that business. At that time Overman was having financial difficulties with the Mobil Oil Corporation which was furnishing gasoline to the service station. When Mobil threatened to terminate deliveries and close the station down, respondent assured the Mobil representative: "Look, you don't have to worry. You'll

[1]The presentment erroneously referred to Richard Carrero instead of Richard Corio.

be paid. Bob Overman's my partner, and I assure you you'll get paid." Mobil relied on these representations and continued to deliver gasoline to the station. However, respondent was not and had never been Overman's partner.

A few days after this misrepresentation the respondent prepared for submission to the Internal Revenue Service form 2553, in which Petro Enterprises elected in accordance with I.R.C. § 1372(a), subchapter S, not to be subject to corporate income taxes. All stockholders must consent in order to qualify the corporation under the Internal Revenue Code. Respondent listed on the form Overman and himself as the only stockholders, showing each owning 10 shares of the 20 shares of issued and outstanding capital stock. He signed and verified on the form that "[u]nder penalties of perjury I declare that this election is duly authorized and that the statements made herein are to the best of my knowledge and belief correct and complete statements." Attached to the subchapter S form was a resolution of the shareholders affirming that Petro Enterprises was qualified. The resolution was signed by Overman and respondent—next to each name being shown only "10 shares". Respondent mailed the form to the Internal Revenue Service. The statement with respect to respondent's stock ownership was untrue. Respondent explained that he had filled out the form falsely because he wanted some data to prove to Mobil, in the event the occasion arose, that he was an equal owner of the business.

Respondent also was to obtain a New Jersey Sales and Use Tax number for Petro Enterprises. He had forgotten to take care of the matter, and, on recalling that on the morning of July 8, 1970, respondent filled out the application form. Seated in his office was a Joseph Guadara who was at that time a political ally. So, respondent had Guadara sign the application form as president of Petro Enterprises because he thought he could have "a president who was not really the president but an acting president sign a form for the ministerial or administrative function of getting that

number." Respondent mailed this form to the New Jersey Sales Tax Bureau in Trenton.

In July 1970 a sales representative of Mobil Oil Corporation was pressing for collateral security of Petro Enterprises' indebtedness of $10,000. Respondent advised the Mobil representative that Guidon-Michel Associates, a corporation owned by respondent's brother Joseph, would execute a mortgage note and mortgage on its property in North Bergen in favor of Mobil to secure that debt. Respondent signed the names Richard Corio and John Duffy on the mortgage and mortgage note, as president and secretary, respectively. Neither Corio nor Duffy was an officer of that company. Respondent asserted that his brother Joseph had authorized him to execute the mortgage and mortgage note, and that respondent had been mistaken as to the identity of the corporate officers. Respondent testified that he was unaware that he needed a power of attorney to sign a mortgage or other document on behalf of another person.

Respondent also filled out an acknowledgment on the mortgage note and signed his brother's name as notary public. The acknowledgment recited that Richard Corio personally appeared before the notary, that the notary made known to Corio the contents of the note, and that Corio "signed, sealed and delivered" the note "as his voluntary act and deed." The acknowledgment was false in every respect. Respondent asserted that: "I didn't know that I was doing anything wrong by taking that . . . signing Joe's name there."

Respondent's defenses to these misdeeds are his inexperience, bona fide intentions and the lack of harm to anyone. Respondent was admitted to the bar in 1967 and, after joining his father's law firm in 1968, he became completely enveloped in politics. When these misdeeds occurred in 1970, he asserts he was a young inexperienced attorney who devoted little time to the practice of law. He testified that he did not intend by any of these misdeeds to commit wrongs and obtained no personal gains from any of these transactions.

Although respondent concededly was inexperienced and did not personally obtain any money by his wrongdoings, we cannot countenance such ineptitude involving as it does misrepresentations and violations of the law, Protestations that he did not know certain conduct was proscribed cannot serve as an excuse. He must have known from the very language of the acknowledgment, for example, that it was required that Richard Corio appear before him in person. How else could he have made known the contents of the note and receive Corio's acknowledgment that he executed the document as his voluntary act and deed? See *Smiley v. Hanna*, 94 *N. J. Eq* 573 (Ch. 1923); *In re Breidt and Lubetkin*, 84 *N. J. Eq.* 222 (Ch. 1915); *Immerman v. Ostertag*, 83 *N. J. Super.* 364 (Law Div. 1964). So, too, the verification statement submitted to the Internal Revenue Service is clear on its face. Respondent verified facts which he knew were untrue. Though respondent disclaimed intentional wrongdoing, he acted with knowledge and deliberation. As indicated above, the federal law requires that verification of documents made under provisions of the internal revenue laws shall be made under the penalties of perjury. I.R.C. § 6065. Form 2553 so provided. Those penalties are equated under federal law with felonies and are punishable with fines not to exceed $5,000 and imprisonment of not more than 3 years or both. I.R.C. § 7206.

Violations of *DR* 1–102(A)(4) and (5) are obvious. We are not unmindful of respondent's inexperience, absence of a malicious intent and the fact that no harm was visited upon anyone. Respondent is hereby suspended from the practice of law for a period of one year and until further order of the Court.

*For suspension for one year*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*Opposed*—None.

318

## ORDER

It is ORDERED that PETER M. MOCCO of Jersey City be suspended from the practice of law for one year and until further order of the Court, effective January 30, 1978; and it is further

ORDERED that PETER M. MOCCO be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with all the regulations of the Supreme Court Governing Disbarred, Resigned and Suspended Attorneys.