IN THE MATTER OF
JOHN W. SURGENT, ATTORNEY-AT-LAW.

Argued April 3, 1979—Decided May 14, 1979.

*Mr. Richard J. Engelhardt* argued the cause for the Disciplinary Review Board.

*Mr. Sheldon L. Zelig* argued the cause for respondent.

PER CURIAM. After considering three complaints against respondent the District Ethics Committee for Passaic County issued presentments on two of the matters and recommended a private reprimand on the third. Thereafter the Disciplinary Review Board, upon a review of the full record and following a hearing, agreed with the local Committee's determination that Mr. Surgent had engaged in improper and unethical conduct. The Board recommended that this Court issue a public reprimand and charge respondent for the actual cost of disbursements for stenographic transcripts arising out of these disciplinary proceedings.

Our independent review of the entire record leads to the conclusion that respondent has been guilty of ethical infractions in several instances. Moreover, while we attach considerable weight to the recommendations of the Disciplinary Review Board, it is our view that a reprimand inadequately reflects the seriousness of the misconduct revealed by this record. We therefore impose a period of suspension.

We address the three complaints in the same order as appears in the Decision and Recommendation of the Disciplinary Review Board.

I

In October, 1977 Mrs. Barbara McNeill retained respondent to institute suit on behalf of Automated Management Association, a corporation of which Mrs. McNeill was a principal. It was a matter of some urgency requiring immediate attention. Respondent promptly but unsuccessfully sought emergent relief in the Superior Court and, when that was denied, immediately made application in the United

States District Court, likewise for emergent relief. In this latter suit respondent, for jurisdictional purposes, listed various clients of Automated Management Association as plaintiffs. The signatures of these clients were needed for the Verified Complaint and on the individual verifying affidavits filed with the federal court.

To that end, and in order to expedite matters, respondent arranged for Mrs. McNeill personally to travel to the clients' various offices in New York State to obtain the necessary signatures. However, although respondent cautioned Mrs. McNeill as to the necessity for the clients to read the documents before signing them, and although Mrs. McNeill was supplied with a chauffeur to drive her to the clients' offices, no Notary Public accompanied her for the purpose of taking the jurat on the papers to be signed by the clients.

When Mrs. McNeill returned with the papers, respondent took the jurat for the respective clients who had signed the documents, even though he had not actually seen them affix their signatures and had not obtained their acknowledgement of those signatures or placed them under oath. Respondent admits that his conduct in this regard amounts to a violation of DR1–102(A)(4), prohibiting conduct involving dishonesty, fraud, deceit or misrepresentation, and of DR7–102(A)(5), prohibiting the knowing making of a false statement of law or fact, as found by the Disciplinary Review Board; but he attempts to minimize the severity of the misconduct by reference to the emergent nature of the circumstances. We need not determine whether the Disciplinary Review Board's findings, which respondent challenges, that he took the jurat "casually" and that his disregard of his professional obligation was "cavalier" are supported by clear and convincing proofs in the record; for irrespective of respondent's state of mind or of the circumstances in which he found himself, we are not presently aware of any situation whatsoever in which this sort of violation could be condoned. While it is true that similar violations have received less than perfectly consistent treatment by our courts over the

years (*compare In re Breidt and Lubetkin,* 84 *N. J. Eq.* 222 (Ch. 1915) *with In re Conti,* 75 *N. J.* 114 (1977); and see *In re Mocco,* 75 *N. J.* 313, 317 (1978)), we take this opportunity to disabuse the bar of any lingering notion that the plain and unmistakable requirements regarding the execution of jurats and taking of acknowledgements need not be met in all respects.

## II

The second complaint against respondent was brought by Dr. Bodahna A. Swystun, who first consulted Mr. Surgent in August, 1973 regarding a problem with some real estate she owned in New York State. She was also seeking to acquire an office building in Clifton. Respondent suggested that property at 57 Lakeview Avenue in that Town might be suitable. He told Dr. Swystun that the purchase price was $140,000 and suggested that her New York property could be utilized as a partial down payment. The narrative may best continue with the Disciplinary Review Board's recitation of the critical facts as follows:

The record discloses that respondent owned fifty per cent of the London Corporation, which owned the building at 57 Lakeview Avenue, and that the Corporation had acquired the building in November, 1972 for a purchase price of $105,000. Although respondent advised Dr. Swystun that the Clifton property was owned by the London Corporation and that he was a principal in the Corporation and represented it, he did not inform her that the property had been acquired for $105,000.

Furthermore although Dr. Swystun knew that respondent, as a principal of London Corporation, was personally interested in the transaction, and signed a consent to respondent's dual representation on August 21, 1973, it is clear that negotiations between the parties commenced earlier than the date of the consent agreement.

Additionally, respondent failed to fully disclose to his client the fact that there was a substantial possibility that the Clifton property would not produce sufficient income to meet her carrying charges and that there was a risk that the mortgage on the Clifton property could be accelerated as a result of the transfer of title. Indeed, as matters developed Dr. Swystun was unable to meet the carrying

charges and Fidelity Union Trust Company, the mortgagee, ultimately foreclosed on its mortgage.

Based on these findings, which are fully supported by clear and convincing proof in the record, the Disciplinary Review Board concluded that respondent's conduct was in violation of DR5–101.(A), DR5–104(A), and DR5–105(A) and (B), which address the stricture against entering into or continuing a professional relationship which may be interfered with by collision with the lawyer's own interests. In this transaction Dr. Swystun required completely independent representation due to respondent's personal involvement in the transaction and to the fact that his own economic interests were adverse to those of his client. In failing to disclose all the pertinent facts, particularly the fact that the seller, the corporation in which respondent held a major interest, stood to realize a $35,000 profit on the sale of property which it had held for a relatively brief period, respondent put his own self-interest above that of his client, to whom he owed complete and unfettered loyalty — an obligation which carried with it a duty of full disclosure under these circumstances. We would expect that the admonition appearing in the opening paragraph of our opinion in *In re Palmieri*, 76 *N. J.* 51, 52–3 (1978), would be taken to heart to the end that attorneys would avoid entanglements of their personal business concerns with their professional relationships.

## III

In the third complaint, in which the local Committee recommended a private reprimand, we adopt verbatim the Disciplinary Review Board's report, reading as follows:

In June, 1975 William Moebius, Robert Denton and respondent's cousin, Boris Surgent, entered into an agreement to form the American Surplus Investment Company, a corporation engaged in the sale of used cars. Only Mr. Moebius was designated as a principal of the corporation. Boris Surgent was listed merely as an employee of the corporation, as he was unable to be licensed as an owner of

any interest in a used automobile business due to prior legal difficulties. Thereafter respondent represented the corporation in several law suits dealing with debtor-creditor relationships. The corporation eventually ran out of capital and terminated operations in August, 1976. However, respondent's last representation of the corporation concluded in the early fall of 1976.

Thereafter Mr. Moebius was named as defendant in a suit filed in March, 1977, in the Law Division of the Superior Court under the caption "Roy Luyster, t/a Roy's Amoco v. American Surplus Investment Company, Robert Denton and William Moebius." The plaintiff in the matter was represented by respondent. The suit charged that Mr. Luyster performed repair work upon various cars for the defendants and was owed compensation for services rendered. According to respondent, Mr. Luyster requested that Boris Surgent not be named as a defendant in the suit.

In respondent's behalf, the record does not contain any indication that he became privy to any confidential information regarding the financial structure and health of the corporation during his representation of it. Such a confidential relationship is denied by respondent and the testimony of the complainant does not establish such a relationship. Respondent did not form the corporation, was not consulted regarding its finances and operations during its existence, nor was his advice sought when it ceased operations. Further, he was brought in on an individual case by case basis to defend the business against suits brought against it.

However, the record does disclose that respondent had acted as attorney for the corporation in the same area of law as he later acted against the corporation, namely, in a debtor-creditor relationship. It is to be expected that a suit against a former client in the same sphere of law in which he had formerly represented that client would generate a feeling of betrayal on the part of the former client. Although it is asserted that Mr. Luyster told respondent that he did not want to assert a claim against respondent's cousin, Boris Surgent, still respondent should have declined the case in order to avoid the appearance of impropriety.

It is apparent that respondent recognized this obvious conflict when he, in his answer to the ethics complaint filed by Mr. Moebius, stated that he had decided to withdraw as counsel for Mr. Luyster in order "to maintain public confidence in the bar * * * to avoid the appearance of, and eliminate any question of impropriety". However, in March, 1978, prior to the Committee hearing in this matter, he decided to reenter the case as counsel for Mr. Luyster, at the request of Mrs. Luyster. As of the date of the hearing before this Board respondent continued in this representation.

The Board is of the opinion that respondent's representation of Mr. Luyster is violative of the Code of Professional Responsibility for, as in the present case, when a former client would have any

logical reason to feel aggrieved by an attorney's subsequent representation of a hostile party, the necessity of maintaining proper public relations for the bar and of avoiding the appearance of wrongdoing should cause the attorney to refuse to accept such employment. When there is the slightest doubt as to whether a proposed representation involves such a conflict of interest, or encompasses a possible conflict between the interests of a new and former client, the doubt must be resolved by the attorney's declining to accept the new client.

## IV

While it may be that no one of the professional misdeeds recited herein would, standing alone, call for more than a reprimand, taken altogether they represent an insensitivity to the mandates of the disciplinary rules. Although that tendency has not yet formed a pattern of misconduct, there is more before us than an isolated instance of aberrant behavior. Under these circumstances we conclude that a six months period of suspension best represents the appropriate discipline. The respondent will, in addition, bear the costs of the stenographic transcripts.

So ordered.

*For suspension*—Chief Justice HUGHES, Justices MOUNTAIN, CLIFFORD, SCHREIBER and HANDLER and Judge HALPERN—6.