IN THE MATTER OF DAVID C. EDWARDS, AN ATTORNEY AT LAW.

October 7, 1985.

## ORDER

The Disciplinary Review Board having filed a report with this Court recommending that DAVID C. EDWARDS of MORRISTOWN, who was admitted to the bar of this State in 1973, be disbarred, and good cause appearing;

It is ORDERED that the Report and Recommendation of the Disciplinary Review Board is hereby adopted; and it is further

ORDERED that DAVID C. EDWARDS be disbarred from the practice of law and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED DAVID C. EDWARDS be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that DAVID C. EDWARDS reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### *Decision and Recommendation of the Disciplinary Review Board*

This matter is before the Board based upon a presentment filed by the District X (Morris County) Ethics Committee.

The presentment incorporates four complaints filed against Respondent by former clients charging he misappropriated trust funds, failed to maintain proper books and records, failed to carry out contracts of employment and was grossly negligent.

### 1. GRANT ESTATE MATTER

Respondent was retained by a regular client, Clara Pinkman, who was executrix and sole beneficiary of the estate of Kenneth Grant. Respondent, who had represented Ms. Pinkman for many years was to handle the sale of three parcels of land for the estate. Another attorney had probated the will and had prepared the state transfer inheritance tax return. Payment of the inheritance tax had been deferred pending the sale of this real property. By letter dated November 17, 1981, Ms. Pinkman advised the State Inheritance Tax Bureau that Respondent would represent her and the estate regarding the inheritance tax payment. On the following day, Respondent issued a trust account check for $4,542.29 to this State office. Before doing

so he withdrew his fee in an undisclosed amount from the account for his services in handling her rental properties. When the State Inheritance Tax Bureau received Respondent's check, it issued tax waivers to the estate. However, the check was returned for insufficient funds. The Inheritance Tax Bureau was unsuccessful in contacting Respondent and later referred the matter to the Morris County Bar Association. The estate ultimately paid the inheritance tax in monthly installments concluding in November 1983. Respondent never repaid the estate for the funds he retained to pay this inheritance tax.

On April 16, 1984, a five-count ethics complaint was filed against Respondent. Although Respondent did not appear at the Ethics Committee hearing on April 27, 1984, his attorney stipulated that he violated Count One (failing to account and appropriating funds to his own use) because he did not maintain trust account records as required. The remaining charges were denied. The Ethics Committee Panel found Respondent had engaged in misconduct as stated in the complaint. The Clients' Security Fund reimbursed Ms. Pinkman $1,500.

## 2. GONZALEZ MATTER

Maritza and Carlos Gonzalez had retained a Jersey City attorney to commence legal action to recover a $2,000 deposit which had been wrongfully converted by a real estate broker. After civil action was instituted in the Morris County District Court, the Gonzalezes retained Respondent to continue with the case. They paid a $250 retainer. This initial consultation in July or August 1981 was the last they saw of him. Their letters and telephone calls went unanswered. The Gonzalez complaint was listed for trial in the district court on October 20, 1981. According to court records, judgment was entered for $2,000 in favor of the Gonzalezes. The court records indicate Respondent did appear. When the Gonzalezes did not receive the money, they later hired another attorney and obtained the $2,000, plus interest. They were not successful in getting a refund from Respondent.

On March 8, 1982, the Gonzalezes filed an informal complaint with the District Ethics Committee against Respondent. A three-count formal ehtics complaint was filed on February 21, 1984. On March 15, 1984, Respondent filed an answer denying the allegations. After hearing testimony on April 27, 1984, the District Ethics Committee Panel found Respondent engaged in misconduct in that he failed to communicate with his clients, exhibited a pattern of negligence, failed to transmit the judgment to his clients, and failed to carry out his contract of employment.

### 3. LEYMEISTER MATTER

Mr. and Mrs. Paul Leymeister retained Respondent to represent them when they purchased a new home. At the closing on March 13, 1981, Respondent had the Leymeisters endorse over to him the $60,000 mortgage proceeds check. From this, Respondent was to pay on their behalf $5,755.34 of the settlement charges shown on the RESPA statement. Included in these settlement charges were delinquent municipal taxes and interest. By letter dated May 14, 1981, Respondent informed the Leymeisters that the mortgage company had made these tax payments. He assured them he would resolve the matter and they would receive proper credit for deductions made at the closing. Respondent also billed them an additional $75 for preparing the mortgage and deed.

In July 1982, the Leymeisters received notice from the Morris County Tax Collector that their home was to be sold for about $800 in back taxes. After initial difficulty in contacting Respondent, Mrs. Leymeister spoke to Respondent on the telephone. Respondent informed her he was no longer practicing law. He added that all his records were in his attic and promised to send the cancelled check to either her or the township. The Leymeisters never heard from Respondent again. They had to borrow money to pay the back taxes. They were later reimbursed $838.28 by the Clients' Security Fund.

On February 21, 1984, a six-count ethics complaint was filed against Respondent. Respondent filed an answer on March 6, 1984 stating his conduct "was not intentional, but was an oversight which the respondent could not correct due to the fact that he did not have access to his records." He maintained that he had paid the taxes from the amount held in escrow, but forgot to pay the taxes for one quarter. During the Ethics Committee hearing on April 27, 1984, Respondent's counsel conceded the closing funds had not been used to pay the taxes and were never refunded to the client. The Ethics Committee Panel concluded Respondent's conduct was unethical.

### 4. PARKER MATTER

Respondent was retained by Shirley Parker, administratrix and sole heir of her father's estate. He was to manage the estate assets, which included rental income and proceeds from several life insurance policies and to make necessary mortgage payments from income received. He could not later account for $20,055, which represented rental income and insurance proceeds received. He also had withdrawn $3,900 from the account payable to himself, without authorization or accounting. When Ms. Parker received a mortgage foreclosure notice, she went to Respondent who informed her that he was no longer her attorney. He did not tell her he was suspended from the practice of law. When she inquired about the mortgage, he told her not to worry about it.

An ethics complaint was filed against Respondent on January 14, 1983. An amended complaint was filed in February 1984. Respondent filed an answer on March 6, 1984, wherein he denied

> that the acts complained of were intentional, but avers the same were due to an illness and a dependency on a narcotic drug [Respondent's answer, paragraph 11, page two].

At the Ethics Committee hearing on April 27, 1984, it was admitted that Respondent never prepared a New Jersey Transfer Inheritance Tax Return for the estate, failed to account for

funds entrusted to his care, appropriated the funds for his own use, and failed to maintain trust records as required by Court Rules. He also conceded that his handling of the administration of the estate constituted a pattern of neglect and his failure to properly represent the interests of his client caused damage to his client. The Ethics Committee Panel concluded Respondent had engaged in misconduct. The Clients' Security Fund has reimbursed Ms. Parker $12,000.

Respondent did not appear personally at the District Ethics hearing due to his hospitalization. At the conclusion of the hearings, the Ethics Committee afforded Respondent an opportunity to respond by way of a supplemental affidavit. He also was urged to set forth mitigating factors concerning his conduct, including medical opinions. Respondent declined to file supplemental documents.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied the conclusions of the Ethics Committee in finding Respondent guilty of unethical conduct are fully supported by clear and convincing evidence.

In the *Pinkman* matter, the Board finds that Respondent failed to seek the lawful objectives of his client by failing to pay the inheritance tax, *DR* 7–101(A)(1) and (3), and this misconduct constituted gross negligence, *DR* 6–101(A)(1). Respondent also failed to account for entrusted funds and to maintain the required trust records, *DR* 9–102(A)(2), (B)(3) and (C). His misuse of trust funds constituted conduct involving dishonesty, fraud, deceit or misrepresentation, *DR* 1–102(A)(4).

In the *Gonzalez* matter, the Board finds Respondent failed to communicate with his client and subjected his client to additional expense to recover the $2,000 judgment. This misconduct, along with other neglect, establishes a pattern of negligence, *DR* 6–101(A)(2). Respondent also violated *DR* 7–101(A)(2) by failing to carry out a contract of employment. In the *Leymeis-*

*ter* matter, the Board finds Respondent disbursed funds for an unauthorized purpose and failed to promptly pay funds to his client and to account for funds received, *DR* 9–102(A) and (B). In the *Parker* matter, the Board finds Respondent failed to file an inheritance tax return and to make the required mortgage payments. He also failed to seek the lawful objectives of his client and to carry out his contract of employment, *DR* 1–102(A)(1), (2) and (3) and *DR* 6–101(A)(2). Respondent's failure to maintain client funds in an identifiable trust account, his unauthorized use of the trust funds, and inability to account for those funds violated *DR* 9–102(A), (B) and (C). He also failed to maintain required trust account records. The Board further finds Respondent failed to account for trust funds received, misused those trust funds, and failed to maintain proper records, which adversely reflected on his fitness to practice law (*DR* 1–102(A)(6)).

Respondent's conduct demonstrates a complete disregard for the responsibilities and obligations of being an attorney. His clients trusted him as their attorney. They had every right to expect he would diligently pursue their respective interests. However, Respondent betrayed that trust. His acts of misconduct show an insensitivity to the mandates of the Disciplinary Rules. They also show a pattern of misconduct, not a single instance of aberrant behavior. See *In re Surgent,* 79 *N.J.* 529, 535 (1979).

More disturbing are the acts of misuse of clients' trust funds. This is a serious act of professional misconduct. It is a stain on the profession the public will long remember and weakens the confidence the public should have in the profession.

The Board has carefully canvassed the record for mitigating factors. The Ethics Committee permitted Respondent to supplement the record because he did not attend the hearing. He submitted nothing. He offered in evidence no palliative reason for his acts. Also, he submitted nothing to this Board in explanation of his actions. The Board was concerned with

Respondent's statement in his answer that his acts of misconduct "were due to an illness and a dependency on a narcotic drug." The record offers no further explanation. Since the Respondent did not substantiate this, the Board makes no finding except to caution the Bar that voluntary abuse of narcotics will not be condoned.

In this case, the Board finds no mitigating factors. Misappropriation of clients' funds calls for the most drastic sanction. Disbarment is the only appropriate discipline. *In re Wilson*, 81 *N.J.* 451, 453 (1979). Accordingly, the Board recommends disbarment.

The Board further recommends Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.