IN THE MATTER OF MORTON FELDMAN, AN
ATTORNEY AT LAW.

November 18, 1985.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that MORTON FELDMAN of ATLANTIC CITY, who was admitted to the Bar of this State in 1967, be publicly reprimanded for engaging in conduct that adversely reflected on his fitness to practice law in violation of DR 1–102(A)(6), and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and respondent is publicly reprimanded; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said MORTON FELDMAN as an attorney at law of the State of New Jersey; and it is further

ORDERED that MORTON FELDMAN reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that MORTON FELDMAN, for a period of two years, furnish to the Disciplinary Review Board quarterly reports from his physician that he is following his prescribed medical treatment. The Disciplinary Review Board shall report to the Court with its recommendation on whether the reporting period should be extended prior to the expiration of the two year period.

### Decision and Recommendation of the Disciplinary Review Board

This matter is before the Board based upon two presentments filed by the District I (Atlantic County) Ethics Committee and a presentment filed by the District III (Burlington and Ocean Counties) Ethics Committee. These charges are summarized as follows:

### 1. FANTASIA COMPLAINT

Respondent had filed a civil action on behalf of his client, Strauss Glass Co. Inc., against Frank Fantasia and M.A.M., Inc. to collect about $3,800 which was due his client. During the course of the litigation, defendant's counsel sent three letters to Respondent requesting a copy of the docket number. Respondent, however, refused to comply. Defendant's counsel believed that no papers could be filed without this docket number. On July 25, 1978 he had his secretary call the clerk's office to obtain the number. He then learned that Respondent had obtained a default judgment on that date. Defendant's counsel had not received any legal papers requesting this action. When defense counsel attempted to vacate the default, Respondent refused to consent, causing defendant to make a formal motion to obtain the vacation.

The District Committee concluded that Respondent's conduct was unethical and unprofessional, contrary to *DR* 1–102(A)(5) and (6) and *DR* 7–102(A)(1).

### 2. STRAUSS GLASS CO. INC. V. FRANK FANTASIA, ET AL.

In late October 1980, Respondent filed various legal papers on behalf of his client, Strauss Glass Co. Inc. Included was an affidavit containing the following statement directly below Respondent's signature:

PLEASE TAKE NOTICE THAT ANY FURTHER ATTEMPT TO UTILIZE SLANDER OR TO IMPROPERLY UTILIZE THE JUDICIAL SYSTEM WILL BE MET WITH CRIMINAL PROSECUTION OR A FEDERAL ACTION PURSUANT TO THE UNITED STATES CODE.

On November 7, 1980 the then Division of Ethics and Professional Services (DEPS) filed a complaint against Respondent charging that this statement violated *DR* 1–102(A)(1), (5) and (6) and *DR* 7–105(A). On December 18, 1980 Respondent filed an answer, claiming as affirmative defenses that the notice was not unethical, was necessary for his self-protection and that the federal constitution prohibited government from interfering with his right of free speech. The District Ethics Committee concluded that Respondent's conduct was clearly unethical and unprofessional. It found that the statement was inflammatory, that it was designed to impede the flow of justice and give Respondent a possible unfair advantage in a civil action, contrary to *DR* 1–102(A)(1) and (6) and *DR* 7–105(A).

Respondent had refused to participate in this District Ethics hearing because the Committee would not subpoena certain persons. He complained that he was not able to confront his accuser. His attempt to have the news media attend the Ethics Committee hearing was unsuccessful. The District Ethics Committee recommended that Respondent be psychologically examined because Respondent was either unwilling to follow court rules or was unable to do so for psychological reasons. This Board on May 20, 1981 directed that Respondent be required to

submit to a psychiatric examination. Respondent was psychiat-
rically examined on August 25, 1981. The psychiatrist conclud-
ed that there was no indication of psychotic thought disorder or
patterns of abnormal thinking or trends of abnormal behavior.
Respondent later complained that the psychiatrist had no right
to send the report to DEPS.

Respondent later filed with this Board a response to the
presentment. He maintained that about two weeks before he
filed the affidavit in question Mr. Fantasia had leveled unfound-
ed charges of unethical conduct. An Ethics Committee later
determined there was no cause for these charges. Respondent
claimed that the inclusion of that paragraph in his affidavit
could be considered as defensive to what he considered to be a
series of unfounded ethical complaints by Mr. Fantasia to gain
an unfair advantage over Respondent in the civil case. Respon-
dent acknowledged that the paragraph, at worst, was inappro-
priate, irrelevant and ill-advised. He also admitted that it was
procedurally improper.

### 3. DEPS COMPLAINT

On April 30, 1981 DEPS filed a nine count complaint against
Respondent. A supplemental complaint adding four additional
counts was filed on December 4, 1981. A second supplemental
complaint adding seven more counts was filed on June 1982.
These complaints included various allegations such as failure to
follow court rules, an attempt to acquire a personal interest in a
client's litigation, injection of personal and irrelevant matters
into pleadings, unnecessary and harassing pleadings, lack of
legal responsibility and disruption of a Supreme Court proceed-
ing and a State Legislative session. In essence, the complaints
allege a pattern of bizzare, irresponsible and unprofessional
behavior which reflected adversely upon Respondent's fitness
to practice law. Two of the twenty counts were later with-
drawn by the Complainant. The District Ethics Committee

found no cause of action on eight counts and found that Respondent was guilty of misconduct on ten counts. In summary, the Committee found: Respondent knowingly made himself a fact witness while representing a client and should have withdrawn from the case, *DR* 5-102(A) (Count 1); by making himself a party to his client's cause of action, Respondent acquired an economic interest in that litigation, *DR* 5-103(A) (Count 2); Respondent filed a request for default without supplying his adversary with notice of it and while aware that his adversary had filed various motions regarding this litigation, *DR* 1-102(A) (Count 4); Respondent failed to carry out a contract of employment regarding a divorce matter which ultimately resulted in the complaint being dismissed, *DR* 6-101 and *DR* 7-101(A)(2) (Count 5); Respondent, after filing a lawsuit on behalf of a client against a particular defendant, later represented that same defendant in the same civil action and pursued that defendant's interest against the initial plaintiff, *DR* 2-110(B)(2) and *DR* 5-105(B) (Count 6); submitted a false affidavit to a court by having his secretary, at the home of the ill client, take down in speedwriting what the client related, and having the client sign blank pieces of paper and then having the secretary transcribe her notes onto the signed paper, *DR* 1-102(A)(4), (5) and (6) (Count 10); submitted an affidavit, which was undignified, discourteous and degrading to a court, *DR* 7-106(C)(6) (Count 11); after learning that the State Supreme Court denied his request for oral presentation, Respondent (in an unscheduled appearance) attempted to address the Court, ignoring repeated statements from the Court that he would not be heard, *DR* 7-106(C)(6) (Count 12); Respondent disrupted ongoing municipal court proceedings by attempting to serve the judge, while on the bench, with a subpoena. On another occasion Respondent gratuitously offered citations of law while attorneys involved in a case were presenting their arguments to the court, *DR* 1-102(A)(5) (Count 14); after having been publicly reprimanded for bizzare and unorthodox conduct, 78 *N.J.* 627

(1979), Respondent continued a pattern of bizzare, irresponsible and unprofessional behavior which reflected adversely upon his fitness to practice law, *DR* 1–102(A)(1) and (6) (Count 20).

DEPS filed a motion on December 4, 1981 to have Respondent temporarily suspended based upon his disrespectful conduct before the Supreme Court and the joint session of the State Legislature on November 16, 1981. Respondent was suspended by the Supreme Court on January 11, 1982 and was reinstated on June 18, 1982.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Ethics Committee in finding Respondent guilty of unethical conduct are fully supported by clear and convincing evidence, except with respect to Count 10.

The record in Count 10 does not, by clear and convincing evidence, sustain a finding that the affidavit was false. Respondent and his secretary went to the home of his elderly, ill client where the secretary took the client's statement in speed writing (a form of abbreviated cursive writing). The uncontradicted testimony was that the client swore that his verbal statement was true and signed the raw notes. The affidavit as submitted to the trial court was typed onto blank sheets of paper which the client had earlier signed in Respondent's presence. The contents of this affidavit were later reaffirmed by the client in a subsequent affidavit. Respondent's testimony concerning the circumstances under which the affidavit had been prepared was corroborated by his secretary's affidavit. The secretarial affidavit, although not introduced into evidence at the ethics hearing, was partially read into the record. These affidavits were accepted by the trial court in Respondent's successful defense of a summary judgment motion. Clearly, this was not a false document as charged. "[T]he proofs fell

short of meeting that (clear and convincing) standard." *In re Milita*, 99 *N.J.* 336, 341 (1985). Count 10 must be dismissed.

While for the most part not one of the incidents recited herein would, standing alone, call for the imposition of public discipline, taken together they represent an insensitivity to the mandate of the disciplinary rules. It was a pattern of aberrant behavior and not an isolated instance. *Cf. In re Surgent*, 79 *N.J.* 529, 539 (1970).

Of particular concern to the Board was Respondent's conduct in Count 6 of the initial DEPS complaint. In that case, Respondent filed a complaint on behalf of his client which included one of her sons as defendant. That civil action sought to quiet title to two parcels of real estate. He later filed a substitution of attorney whereby he represented the defendant son as well as his mother in the same action. While representing the son, Respondent prepared a trust agreement for that son whereby the son obtained unilateral control over his mother's assets. The mother later retained another attorney and commenced legal action against her son and others to acquire certain stock which was obtained when the real property was sold. At the Board hearing, Respondent acknowledged that his conduct in this matter was inappropriate. However, he emphasized that he was not guilty of misappropriation or of exploiting the confidences of his client. Respondent's conduct here was contrary to *DR* 2–110(B)(2) in that an attorney is required to withdraw from employment if he knows or believes that his continued employment will result in a violation of a disciplinary rule. His conduct was also contrary to *DR* 5–105(B) which requires that an attorney shall not continue multiple employment if the exercise of his independent professional judgment on behalf of a client would be or was likely to be adversely affected by his representation of another client.

Another incident of note was Count 5 of the first DEPS Complaint whereby Respondent filed a divorce complaint on behalf of his client in January 1979. The complaint was later

dismissed by the court on November 25, 1980 for failure to prosecute. Another attorney was retained to follow through with this legal action. Respondent's conduct here constituted gross negligence, *DR* 6–101, and a failure to carry out a contract of employment, *DR* 7–101(A)(2).

These two incidents of misconduct are sufficient to establish that Respondent engaged in conduct that adversely reflected on his fitness to practice law, *DR* 1–102(A)(6).

In determining the proper discipline to recommend, the Board is mindful that the purpose of discipline is protection of the public and not punishment of the attorney. Mitigating factors are relevant. In *re Hughes*, 90 *N.J.* 32, 36 (1982). "The severity of discipline to be imposed must comport with the seriousness of the ethical infractions in light of all the relevant circumstances." *In re Nigohosian*, 88 *N.J.* 308, 315 (1982).

At the ethics hearing, medical testimony was introduced indicating that Respondent suffers from epilepsy and that this uncontrolled illness contributed to some of Respondent's unorthodox behavior. At the Board hearing, Respondent introduced a two-page report from his physician stating that Respondent is receiving ongoing medical treatment for his condition. The doctor believed that Respondent's behavior was attributable to his epileptic condition which during the time period involved was not under control. The doctor stated that Respondent's condition has been stablized as a result of medication which he is taking regularly and faithfully. The doctor added that Respondent understands his condition better and is aware that he should contact his doctor immediately should he realize a change in condition. Respondent also produced a two-page report from a psychologist who has periodically treated Respondent since 1977 particularly during 1982–83. In summary, the psychologist reports that psychologically Respondent's personality has changed and that Respondent has developed a more

realistic and more objective perception of himself and others. The psychologist concluded that Respondent has achieved a sense of reality and responsibility which will permit him to function within the system and not as an adversarial outsider.

In determining the appropriate discipline in this matter, the Board has considered the totality of the circumstances. Respondent has been a member of the Bar since 1967. On January 8, 1979 Respondent was publicly reprimanded for violating *DR* 1-102(A)(5) and (6) in connection with his conduct before the Violent Crimes Compensation Board and the Atlantic County Ethics Committee. There are no other complaints pending against Respondent. No new complaints have been filed against him for more than two years, evidencing his ability to work within the system.

Although Respondent had previously been disciplined, the Board concludes that Respondent's conduct during the time in question was greatly affected by his physical and mental condition. His acts of improper behavior injured no clients but did reflect on the competency and integrity of the entire Bar. *In re Barry*, 90 *N.J.* 286, 291 (1982). Respondent was temporarily suspended from the practice of law for six months in 1982 based on his conduct. The Board believes that in light of that suspension the interest of the public and legal profession now will be adequately served by a public reprimand. Additional discipline, at this time, would be more vindictive than in the public interest. See *In re Verdiramo*, 96 *N.J.* 183, 197 (1984). The Board further recommends that Respondent be directed to furnish quarterly reports from his physician that Respondent is following the prescribed medical treatment for a period of at least two years.

The Board further recommends that Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.