IN THE MATTER OF ARTHUR D. LORING AND JAMES F. HOUSTON, ATTORNEYS AT LAW.

Argued March 8, 1977—Decided June 1, 1977.

284

Mr. *John C. Givens* argued the cause for complainant Monmouth County Ethics Committee.

Mr. *Warren W. Wilentz* argued the cause for respondent Arthur D. Loring (*Messrs. Wilentz, Goldman and Spitzer,* attorneys; Mr. *E. James Mullaly* on the brief).

Mr. *Stanley Yacker* argued the cause for respondent James F. Houston.

PER CURIAM. The respondent Arthur D. Loring, an attorney at law of New Jersey, has been charged with violations of various Disciplinary Rules arising out of three separate incidents. Charges also were made against the respondent James F. Houston, an attorney at law of New Jersey, based on one of those episodes. Separate hearings were held before the Monmouth County Ethics Committee on each of the three transactions, there being one joint hearing which involved the two respondents. These matters came before us on the return day of orders to show cause why the respondents should not be disbarred or otherwise disciplined. The order to show cause directed to Loring was predicated on two presentments of the Monmouth County Ethics Committee, one concerning a transaction with Marvin J. Rosenfield and the other with Mr. and Mrs. Timothy O'Connell, and on the Committee's report involving an in-

cident with Mr. and Mrs. Fusco. We are satisfied, after reviewing the record, that the facts are as set forth below.

## I. *The Fusco Complaint*

Mrs. Ann Fusco suffered severe injuries as a result of a fall in a shopping center on January 22, 1972. In June 1972, Mr. and Mrs. Fusco retained respondent's law firm to represent them. Respondent was in charge of the case. Since the time was approaching when the two year statute of limitations would bar any action, Mr. Fusco telephoned the respondent once or twice a month to ascertain the status of the proceeding. He did not succeed in speaking with respondent, but was consistently told by the office that respondent would return his calls. Other than on one occasion, respondent did not communicate with Mr. Fusco. Mrs. Fusco also made a number of telephone calls to respondent, but never spoke to him or received any type of response from him.

The respondent did not file a complaint until two years and one day from the date of the accident. On motion the complaint was dismissed because of the statute of limitations. The respondent filed an appeal but it was also dismissed because the notice of appeal had been filed more than 45 days after entry of the judgment of dismissal. *R.* 2:4-1(a). When Mr. and Mrs. Fusco's new attorney inquired as to the status of the appeal by letter dated January 21, 1976, respondent did not reply. The attorney's two telephone calls to respondent went unanswered. The attorney then wrote another letter to respondent who finally responded indicating the appeal was pending when in fact it had been dismissed.

The Monmouth County Ethics Committee, although concluding there was no unethical or unprofessional conduct, filed a report with the Court in which it recommended a reprimand because his "professional conduct was deficient, improper and not in the best traditions of the legal profession."

## II. *The Rosenfield Complaint*

Marvin J. Rosenfield was defended by respondent in a municipal court proceeding on July 26, 1971. Upon being convicted, Rosenfield stated that he wanted to appeal from the judgment. Respondent advised Rosenfield to consider it further and "get back to me." In the next day or two, Rosenfield telephoned and advised respondent to proceed with the appeal. Rosenfield was told that $60 was required for the filing fee and a deposit for the transcript. He then went to respondent's office on August 3 and gave him a check for $60, which respondent accepted and deposited.

Respondent admitted receipt of a letter on August 14, 1971 in which Rosenfield sought information on the status of the appeal. Respondent never answered that letter. Rosenfield telephoned respondent on numerous occasions and left messages for a return call. None was made. He wrote respondent about seven letters which were never answered.

Rosenfield had sent respondent a check for $20 on August 14, 1971, $15 on August 20, and $10 on September 1, in part payment of respondent's services in the municipal court. Since these checks were not cashed and the telephone calls and correspondence remained unanswered, Rosenfield visited respondent at his office on December 15. Respondent then told Rosenfield for the first time that the appeal had not been filed, and that he was returning the three checks which totalled $45.

The Monmouth County Ethics Committee found that a presentment was not warranted but that the respondent should be reprimanded. Thereafter upon direction by the Court, the Committee submitted a presentment in which it found substantially the facts recited above.

## III. *The O'Connell Complaint*

The charges in this complaint involve respondent Loring and respondent James F. Houston. In November 1973, Mr. and Mrs. Timothy P. O'Connell retained the respondent

Loring's law firm, Loring and Miele, to represent them in connection with their purchase of a home. Respondent Houston, who was employed by Loring and Miele, was in charge of the matter.

The property had previously been sold to a Mr. and Mrs. Hughes but they had refused to consummate the transaction. Loring and Miele had represented Mr. and Mrs. Hughes and had had a search and survey prepared. The search had been made by Joseph Hayduk who worked for the Colonial Abstract Company which during this time was owned by Loring and Miele. The previously completed search and survey were used for the O'Connell transaction.

The O'Connell closing occurred on December 28, 1973. Respondent Houston represented the buyers. Although the survey was certified to Mr. and Mrs. Thomas J. Hughes, and a title binder was also addressed to them, he delivered these documents to Mr. O'Connell without explanation.

Shortly after taking possession on or about December 31, 1973, there was a severe storm and as a result, Mr. O'Connell discovered a water condition in the driveway of his new home. When he told his neighbor that he proposed to repair the driveway, he was advised not to do so because the Bayshore Regional Sewerage Authority had a ten-foot easement through the driveway where it planned to install a sewer pipe. Mr. O'Connell immediately telephoned Mr. Houston at his home. He replied, "You want me to run back to the office and check it out? There is nothing I can do anyway until we get back." On his return to the office, he called Hayduk. Hayduk then rechecked the records and discovered that he had omitted the easement from the search.

Mr. O'Connell telephoned the office several times, but on each occasion he was told that respondent Houston was busy and that the call would be returned. It never was. Mr. O'Connell then sent respondent Houston a registered letter dated January 8, 1974. Mr. O'Connell wrote that he had been told that the file would be checked by Wednesday, January 2, 1974; that when he called on January 3, 1974

the secretary said the title searcher was investigating; that his own investigation disclosed the easement; and that "[s]ince you have failed to answer my calls, I feel that for some reason you are trying to avoid me." Houston turned the matter over to the respondent Loring who suggested in a letter of January 10, 1974 to O'Connell that they meet. A conference occurred on January 26, 1974 at the respondent Loring's office. Loring disclaimed any responsibility and asserted that the culpability was attributable to the searcher or title company, even though O'Connell had not purchased any fee or mortgagee title insurance. (The property was not being encumbered with a new mortgage.) He did not explain the relationship of the searcher to the Colonial Abstract Company or of the company to himself. When Mr. O'Connell accused Loring of misconduct, he was told to retain another attorney.

The Monmouth County Ethics Committee did not recommend any presentment but did urge that a severe private reprimand be given to respondent Houston. Subsequently the Committee at the direction of the Court filed a presentment against the respondents Loring and Houston.

## IV. Respondent Loring's Conduct

A common pattern of respondent Loring's conduct is evident in these three incidents — a failure to communicate with and fully explain to his clients all salient facts and circumstances. In Fusco, he concealed the fact that he had permitted the statute of limitations to run and misrepresented the status of the appeal. As part and parcel of this conduct, he frequently ignored the clients' requests for information. The same type of behavior existed in the incident involving Rosenfield when he ignored frequent status requests and waited for months before advising him that no appeal had been taken. In O'Connell he concealed from the client the relationships of the abstractor, the abstract company and himself. It was only after unanswered telephone inquiries and a registered

letter demand that he invited Mr. O'Connell to a meeting to explain the omission in the search.

Other than factual questions, which we have resolved in the foregoing recitations, the respondent's defense is that this Court may. not exercise its authority to discipline an attorney when the county ethics committee has not recommended a presentment and has suggested a private reprimand. This position is unsound. We review the actions of the county ethics committees; if we do not concur in their conclusions or harbor a substantial reservation about them, we may and should exercise our authority to cause the matter to be presented to us. See *In re LaDuca,* 62 *N. J.* 133, 136, 141 (1973). In the final analysis, the State Constitution has imposed on this Court the ultimate obligation to determine whether members of the bar have committed infractions of the Disciplinary Rules and, if so, to fix the appropriate discipline. *N. J. Const.* (1947), Art. VI, § 2, par. 3. *In re Logan,* 70 *N. J.* 222, 225 (1976); *In re Thompson,* 67 *N. J.* 26, 32–33 (1975).

Respondent also contends that this Court may consider ethics matters only when a county ethics committee has filed a presentment. This Court has the inherent power predicated on its constitutional duty to initiate disciplinary proceedings on its own or, as here, when the Chief of the Central Ethics Unit, Administrative Office of the Courts, has brought to our attention matters which warrant the institution of such proceedings. *In re Thompson, supra.*

The attorney-client relationship embodies the concept of the client's trust in his fiduciary, the attorney. That relationship is described in *Stockton v. Ford,* 52 *U. S.* (11 How.) 232, 247, 13 *L. Ed.* 676 (1850):

> There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably or faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious,

to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.

Inherent in that trust is the duty to advise the client fully, frankly, and truthfully of all material and significant information. The respondent has violated that duty and that trust. We have previously reprimanded him for precisely the same type of conduct. *In re Loring,* 62 *N. J.* 336 (1973). We wrote at that time:

> As to the charge of failing to keep his client informed about the status of the appeal and to respond to the latter's inquiries in relation thereto we concur in the Committee's conclusion of unprofessional conduct by respondent. The facts in the matter, as recited above, speak for themselves. "It is as improper for a lawyer to deliberately refuse to inform a client of the status of his matter as it is to affirmatively misrepresent that status." *In re Rosenblatt,* 60 *N. J.* 505, 508 (1972). Respondent inexcusably refused to respond to reasonable requests by and on behalf of his client for information and advice about the case. [*Id.* at 346]

██ Respondent's conduct impairs the confidence of the public in the bar and constitutes a violation of *DR* 1–102. He is suspended for a period of six months and until the further order of this Court.

### V. *Respondent Houston's Conduct*

██ The Monmouth County Ethics Committee found that the respondent Houston failed to carry out his duties of employment by not reviewing O'Connells' purchase contract, by not obtaining title insurance and by neglecting to obtain continuation searches and a survey certified to them. We are of the opinion that either the proofs do not support these conclusions (respondent was not engaged until after the contract was signed) or involve deficiencies attributable to simple negligence. *In re Gelzer,* 31 *N. J.* 542, 543 (1960). We do agree and concur in the Committee's findings that he failed to communicate adequately with Mr. and Mrs. O'Connell and that such conduct "tends to support and justify many of the

current negative attitudes by the public at large towards the legal profession." Accordingly, he is hereby reprimanded.

*For suspension for six months of Loring and for reprimand of Houston*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*Opposed*—None.

## ORDER

It is ORDERED that ARTHUR D. LORING of Hazlet be suspended from the practice of law for six months and until further order of the Court, effective June 20, 1977; and it is further

ORDERED that ARTHUR D. LORING be and hereby is restrained and enjoined from practicing law during the period of his suspension.