IN THE MATTER OF ROBERT S. TEMPLIN, AN
ATTORNEY AT LAW.

December 10, 1985.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that ROBERT S. TEMPLIN, formerly of ELKINS PARK, PENNSYLVANIA, who was admitted to the Bar of this State in 1972, be suspended from the practice of law for a period of one year, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board is hereby adopted, and ROBERT S. TEMPLIN is suspended from the practice of law for a period of one year, effective immediately; and it is further

ORDERED that prior to action being taken on an application for restoration, respondent will be required to demonstrate, through relevant medical and psychiatric evidence, that he is capable of practicing law; and it is further

ORDERED that respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs incurred in the prosecution of this matter; and it is further

ORDERED that respondent is restrained and enjoined from practicing law during the period of his suspension and that he shall comply with Administrative Guideline # 23 of the Office of Attorney Ethics.

*Decision and Recommendation of the*
*Disciplinary Review Board*

This matter is before the Board based upon a presentment filed by the District III (Burlington County) Ethics Committee.

Respondent is charged with a pattern of negligence and a failure to carry out contracts of employment. The facts are as follows:

### 1. CONTE COMPLAINT

In 1978, Respondent accepted a $300 retainer from Donald Conte to file suit against the builder of the Conte residence. By letter dated December 10, 1979, Respondent advised Mr. and Mrs. Conte that the case was scheduled for trial on February 4, 1980. He told them to call his office one week before that trial date so they could thoroughly discuss the case. Respondent later advised Mr. Conte not to do anything until Respondent called him. However, Respondent did not advise the Contes of his request to postpone the case. Mr. Conte was unsuccessful in reaching Respondent by telephone although his secretary promised that Respondent would return the call. Respondent did not inform Mr. Conte of the adjourned trial date of April 29, 1980. Since Mr. Conte was not present when the case was called, the trial court granted defendant's motion to dismiss the complaint. Mr. Conte later went to the court house and discovered his case had been dismissed.

## 2. ROBERT GLENN COMPLAINT

Respondent was retained on a contingency basis by Robert Glenn to file a Worker's Compensation claim against Mr. Glenn's employer. Mr. Glenn had received a total of three compensation checks, each for $571, beginning December 1981. Just before the court hearing, Respondent conferred with the judge and his adversary. He then told Mr. Glenn that more medical examinations of him were required. The compensation checks stopped at that time. Throughout the following year, Mr. Glenn unsuccessfully attempted to contact Respondent by telephone and office visits. Respondent never returned the telephone calls. When Mr. Glenn retained another attorney, Respondent refused to turn over the file to him.

## 3. JOHN COOK COMPLAINT

Respondent was retained by John Cook in April 1981 to obtain a patent for his invention of a light bulb base modification. Respondent received a $250 retainer and was to be paid $75 an hour. Respondent went to Washington, D.C. and searched the patent records. On April 20, 1981, he informed Mr. Cook that he believed Mr. Cook had a good chance in obtaining his patent. At a conference on July 22, 1981, Respondent discouraged Mr. Cook from seeking financial support from others, stating he believed that the invention was to be saleable and Mr. Cook would receive funding through various grants. For the next two years, Mr. Cook was not able to contact Respondent. Telephone calls and letters went unanswered. Mr. Cook then retained another attorney who wanted $3,000 to process a patent application. Mr. Cook, by this time, had lost his backers and did not have sufficient funds to complete the procedures.

## 4. COUNTRIES, INC., D/B/A YOUNG & ASSOC. COMPLAINT

In 1982, Respondent was retained to represent Countries, Inc., D/B/A Young & Associates, in defense of a patent in-

fringement claim. When Respondent failed to answer interrogatories propounded by plaintiff, plaintiff moved on October 24, 1983 for a default judgment. The U.S. magistrate recommended to the U.S. District Court that the default be granted, noting Respondent failed to answer the many telephone messages left by the judge and his staff. The default was granted on January 25, 1983. Respondent did not inform his client of the default but, instead, assured the client in June 1983 that the matter was proceeding satisfactorily. Learning in October 1983 of the status of the case, Countries, Inc. sought to contact Respondent. On October 8, 1983, Respondent stated he was unable to continue with the matter and promised to explain the situation to the court, which he never did. He also refused to return the file. The client later retained another attorney who had the default judgment vacated.

## 5. BRUCE BUNNING COMPLAINT

In 1980, Respondent was retained by Bruce Bunning to represent him in a discrimination suit against his employer. Respondent received a $150 retainer. During 1980 and 1981, Respondent was in periodic contact with Mr. Bunning by letter. The matter was listed for trial twice, but was postponed. In 1982, Respondent informed Mr. Bunning that his employer offered to settle for $500. Mr. Bunning claimed he accepted the $500 because he felt his case was not being properly handled by Respondent and he could end up with nothing.

Concerning the Conte, Glenn, Cook and Countries, Inc., matters, the District III Ethics Committee found Respondent guilty of misconduct. It concluded Respondent's conduct constituted a pattern of negligence, contrary to DR 6–101(A)(2) and a failure to carry out contracts of employment, contrary to DR 7–101(A)(2). Concerning the Bunning matter, the Committee found there was no evidence of unethical conduct on Respondent's part and dismissed the complaint.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied the conclusions of the District III Ethics Committee in finding Respondent guilty of unethical conduct are fully supported by clear and convincing evidence.

The record shows Respondent accepted contracts of employment, performed some legal services, but ultimately abandoned his clients. The facts demonstrate more than an isolated instance of aberrant behavior. *In re Surgent,* 79 *N.J.* 529, 535 (1979). There is a "pattern of negligence or neglect." *Matter of Getchius,* 88 *N.J.* 269, 276 (1982). The Board finds Respondent violated *DR* 6–101(A)(2) and 7–101(A)(2). These acts of misconduct also adversely reflect on his fitness to practice law, *DR* 1–102(A)(6).

In addition to his failure to communicate with his clients, Respondent failed to communicate and to cooperate with the District III Ethics Committee. He did not file answers to the complaints, nor did he attend the District Committee hearing. An attorney is obligated to cooperate with the ethics procedure. *In re Gavel,* 22 *N.J.* 248, 263 (1956). Although Respondent did not attend the Board hearing, by an unsigned letter he waived his right to attend. In his letter he alluded to an emotional problem that he maintained overwhelmed him when he was confronted with trial situations. He stated that he was no longer in private practice and had no desire to return to private practice. His letter offered no documentation to support his position, nor was his explanation detailed enough to permit an independent evaluation of his situation.

In determining the appropriate discipline in this matter, the Board notes Respondent was admitted to the Bar in 1972. He has no prior disciplinary record and there are no complaints pending against him. He has left the private practice of law and represented that any future employment would be in a corporate staff or similar position. The public, nevertheless,

must be protected from this kind of unprofessionalism. *In re Palmieri*, 75 *N.J.* 488, 489 (1978).

Based on these factors, the Board recommends Respondent be suspended from the practice of law for one (1) year. The Board further recommends that prior to his readmission, he demonstrate by providing relevant medical and psychiatric evidence that he is capable of practicing law. *In re Goldstaub*, 90 *N.J.* 1 (1982).

The Board further recommends Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.