892 A.2d 533

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

### Richard J. REINHARDT.

Misc. Docket AG No. 1, Sept. Term, 2005.

Court of Appeals of Maryland.

Feb. 10, 2006.

210

Dolores O. Ridgell, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

J. Calvin Jenkins, Jr., Towson, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

The Attorney Grievance Commission of Maryland filed a petition with this Court for disciplinary action against Richard J. Reinhardt, alleging violations of the Maryland Rules of Professional Conduct.[1] The Commission charged respondent with violating Maryland Rules of Professional Conduct: (1) Rule 1.1 Competence, (2) Rule 1.2 Scope of Representation, (3) Rule 1.3 Diligence, (4) Rule 1.4 Communication, (5) Rule 3.2 Expediting Litigation, and (6) Rule 8.4 Misconduct. Pursuant to Maryland Rule 16–752(a), we referred the matter to Judge Ruth Jakubowski of the Circuit Court for Baltimore County to make findings of fact and proposed conclusions of law. Judge Jakubowski held an evidentiary hearing and concluded that respondent had violated Rules 1.1, 1.2(a), and 1.4(b). Respon-

---

1. The version of the Maryland Rules of Professional Conduct applicable to this case is the version of the Maryland Rules in effect prior to July 1, 2005.

dent admitted to violating Maryland Rules of Professional Conduct 1.3, 1.4(a) and 3.2.

## I.

"The Petitioner has charged Respondent with violating the following rules of Maryland Rules of Professional Conduct.

### Rule 1.1. Competence.

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

### Rule 1.2. Scope of Representation.

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

(b) A lawyer's representation of a client, including representation by appointment does not constitute an endorsement of the client's political, economic, social or moral views or activities.

(c) A lawyer may limit the objectives of the representation if the client consents after consultation.

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith

effort to determine the validity, scope, meaning or application of the law.

(e) When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

## Rule 1.3. Diligence.

A lawyer shall act with reasonable diligence and promptness in representing a client.

## Rule 1.4. Communication.

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

## Rule 3.2. Expediting Litigation.

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

## Rule 8.4. Misconduct.

It is professional misconduct for a lawyer to: ...

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice; ...

"The parties entered into a Stipulation (Joint Exhibit 1) in which most of the allegations of Petitioner's Complaint have been admitted.

"All the Petitioner's charges against the Respondent arise out of the Respondent's handling of a personal injury claim of his client, Ms. Bernice Cohen, who was involved in an automobile accident on August 2, 1996. The evidence was undisputed that Ms. Cohen was injured in a multi-vehicle

automobile accident in Maryland on August 2, 1996. At the time of the accident, Ms. Cohen was a resident of New York and the accident occurred in Maryland. The evidence is also undisputed that within about two days of Ms. Cohen's release from Johns Hopkins Hospital, sometime in August of 1996, she engaged the Respondent to represent her in any claims resulting from the automobile accident. It is further undisputed that the Respondent assisted Ms. Cohen in making a claim against her spouse's auto insurance carrier for personal injury protection (PIP) benefits and actually obtained these benefits for Ms. Cohen. It is also undisputed that the Respondent obtained the investigative report, conducted his own investigation and obtained medical reports and bills from Ms. Cohen's health care provider. Respondent admits that he was unable to obtain a financial settlement from the party and/or parties who caused the accident.

"It is further undisputed that on or about July 30, 1999, the Respondent filed a lawsuit in the Circuit Court for Baltimore County on behalf of Ms. Cohen where he named five Defendants including a corporate entity. It is further undisputed that on or about July 30, 1999, the Circuit Court for Baltimore County did issue summons to the Defendants named in the action. It is further undisputed and admitted by the Respondent that he failed to serve said Defendants and failed to take any further action on Ms. Cohen's claim. The Respondent further admits that Ms. Cohen wrote to him on January 14, 2000, requesting a status on her case. The Respondent admitted that he did not respond to this letter and in fact lost the file. According to the testimony, he placed the file in a briefcase and later put that briefcase in a closet, obtained a new briefcase, and did not realize that he had left the file in the old briefcase. It is further admitted by the Respondent that on or about February 20, 2001, Ms. Cohen wrote to the Respondent again requesting information about the status of the case and the Respondent admits to not responding to her letter.

"The evidence further showed that on September 27, 2001, the Clerk of the Circuit Court for Baltimore County issued a Notice of Contemplated Dismissal pursuant to Maryland Rule 2–507. The exhibits presented by the Petitioner indicated that the notification was sent by mail to the Respondent at his Bosley Road address. In testimony before this Court the Respondent indicated that he does not recall ever receiving the 2–507 notice. Although he admits that he failed to take any action to prevent the dismissal of the Circuit Court lawsuit, he does state that if he had received this notice he would have immediately filed a Motion to Stay the Dismissal under Rule 2–507.

"Furthermore, in reviewing the Respondent's file that was admitted into evidence in Petitioner's Exhibit 1, there is no evidence that the 2–507 notification is in the Respondent's file for Ms. Cohen.

"It is further undisputed that on or about April of 2003, Ms. Cohen asked a friend, who is an attorney, to contact the Respondent to gain additional information about the status of her case. On or about May 15, 2003, it is admitted that Elizabeth O'Leary, a New York attorney, spoke with the Respondent by phone and indicated that he was trying to determine the status of her case and promised to contact Ms. Cohen in a few days. Respondent failed to contact Ms. Cohen following the May, 2003, telephone conversation. It is also admitted that on or about July 8, 2003, Ms. O'Leary, counsel in New York, sent Respondent a letter as a follow-up again requesting follow-up.

"Respondent testified that sometime around July or August of 2003, he conducted an aggressive search for the file. He also testified that although he had been searching for the file since January of 2002, that at this point in time he underwent a more rigorous search and ultimately found the lost file in a briefcase in the closet. It is further undisputed that on August 27, 2003, the Respondent sent Ms. Cohen a letter enclosing a copy of the lawsuit.

"Respondent admits that he never told Ms. Cohen that he had lost her file and that he had taken no action on her case

since 1999. He did, however, indicate in his letter that there was an issue about securing service on multiple Defendants and advised her to forward any additional medical expenses for further processing. Respondent testified that at the time he sent this letter he did not know that the case had been dismissed on or about September 27, 2001. It is undisputed by the Respondent that following the letter of August 27, 2003, he did not take any action on Ms. Cohen's case. It is further admitted that Ms. Cohen wrote another letter to the Respondent on or about December 3, 2003, informing that she had neither received mail or telephone communications and wanted a response within thirty days. Respondent admitted to not responding to Ms. Cohen's letter of December 3, 2003.

"It is further admitted that on or about April 7, 2004, Ms. Cohen contacted the Attorney Grievance Commission of Maryland concerning Respondent's conduct. Respondent admitted in his testimony that he lost the file and continued to search for it over an eighteen month period to no avail until August of 2003. He denies that he ever knew that the case was dismissed and testified that he first learned of the dismissal when meeting with a representative of the Attorney Grievance Commission. He testified that he was "overwhelmed" when he found out that the case was dismissed.

"The Respondent **admits** to violating Rule 1.3 (**Diligence**), 1.4(a) (**Communication**) and Rule 3.2 (**Expediting Litigation**). The Respondent denies that he violated Rule 1.1 and 1.2 as he argues that both of these Rules are subsumed by his lack of diligence which he admits in Rule 1.3. The Respondent denies that he violated Rule 8.4 (**Misconduct**) as a result of the Respondent's admitting to violating Rules 1.3, 1.4(a) and 3.2, this Court only will address Rule 1.1, 1.2 and 8.4 in making its Finding of Fact and Conclusion of Law.

### Rule 1.1. Competence.

"In considering all the facts and circumstances elicited through testimony and exhibits in this case, this Court finds

that by clear and convincing evidence that the Respondent in fact was in violation of Maryland Rule of Professional Conduct 1.1. The Respondent admitted to losing a client's file and failing to reconstruct it in a timely fashion, therefore, this Court finds that this admission alone is sufficient by clear and convincing evidence to find that the Respondent violated Maryland Rule of Professional Conduct 1.1 under the case of *Attorney Grievance Commission v. Ober*, 350 Md. 616, 714 A.2d 856 (1998).

### Rule 1.2. Scope of Representation.

"The Respondent admitted to not taking any action on the case after July 30, 1999, when the file was lost. He further admits to not communicating with Ms. Cohen as to the fact that the file was lost and that he was taking no action on her behalf despite her numerous requests regarding status and ultimate resolution of this case. This Court finds by clear and convincing evidence that the Respondent therefore did violate Maryland Rule of Professional Conduct 1.2(a).

### Rule 1.4(b). Communication.

"The Respondent testified that he failed to explain at any time following July 30, 1999, that he had lost the file and that no additional action had been taken on her case. This failure is, in this Court's opinion, by clear and convincing evidence, a violation of Maryland Rule of Professional Conduct 1.4(b) since the Respondent did nothing to permit Ms. Cohen to make an informed decision regarding her representation.

### Rule 8.4. Misconduct.

"It is Petitioner's position that the Respondent violated Rule 8.4(c) and (d). It is the Petitioner's position that there is insufficient mitigation based on the Respondent's testimony or the report of Dr. Janofsky regarding a serious or debilitating disorder. Furthermore, it is Petitioner's position that his conduct in failing to take any action on Ms. Cohen's case and failing to tell her that he had lost the file

and that the case was in fact dismissed rises to the level of proof by clear and convincing evidence to support a finding of a violation of Maryland Rule of Professional Conduct 8.4. This Court has considered the credibility of the Respondent and has reviewed the exhibits presented by both the Petitioner and Respondent and does not find sufficient evidence to support a finding by clear and convincing evidence that the Respondent's conduct in this case rose to the level of misconduct as stated in Rule 8.4. This Court has reviewed the cases that relate to intent and has considered the Respondent's explanation as to why he failed to tell Ms. Cohen that he lost the file and had taken no action on her case since July of 1999. Based on all the factors, including credibility of the witness as well as the mitigating factors as testified to by the Respondent and discussed in a separate paragraph in this opinion, this Court finds that the Petitioner has failed to meet its burden of proof by clear and convincing evidence that the Respondent violated Rule 8.4(c) and (d).

## Mitigating Factors

"The Respondent has introduced into evidence a report dated July 21, 2005, of Dr. Jeffrey Janofsky. Dr. Janofsky is a psychiatrist who evaluated the Respondent for purposes of rendering an opinion as to his mental state at this time. Dr. Janofsky opined that Mr. Reinhardt was not suffering from a diagnosable mental disorder but did suffer from personality trait vulnerabilities that may have interfered with his ability to adequately resolve the Cohen matter. Dr. Janofsky reaffirmed what Mr. Reinhardt stated to him and to both counsel and in fact to this Court, that the reason he failed to deal with what he had done in the Cohen matter was due to "embarrassment". Dr. Janofsky opined that he failed to face the consequences of misplacing the file which led to additional errors in judgment on his part. Dr. Janofsky further notes that his difficulties are exacerbated by a lack of secretaries, associates, partners or other support systems to help him deal with case management. This

Court found Dr. Janofsky's report supportive of this Court's findings that mitigating factors did exist to explain the Respondent's action in this case. This Court considered these mitigating factors in arriving at her findings as it relates to Rule 8.4(c) and (d) along with the testimony of the Respondent.

### Conclusions of Law

"The Respondent has admitted to violating Maryland Rule of Professional Conduct 1.3, 1.4(a) and 3.2.

"This Court finds that the Respondent violated Maryland Rule of Professional Conduct 1.1 by losing the client's file and failing to reconstruct it in a timely fashion.

"This Court further finds that the Respondent violated Rule 1.2 by failing to follow the client's instruction to pursue this case and inform her of the status of the case.

"This Court finds that the Respondent violated Rule 1.4(b) in failing to inform the client of his actions or lack of actions, therefore, denying her the opportunity to make an informed decision as to further representation of her case.

"This Court finds that the Respondent did not violate Rule 8.4(c) and (d) in that he did not have sufficient intent rising to the level of dishonesty, fraud, deceit or misrepresentation to a standard of clear and convincing evidence. This Court has considered the mitigating factors as well as the credibility of the Respondent in arriving at this conclusion."

### II.

Bar Counsel excepts to the hearing judge's failure to find violations of 8.4(c) and (d). Respondent has not filed any exceptions to the hearing judge's findings of fact or conclusions of law.

This Court has original and complete jurisdiction in attorney discipline matters. *Attorney Grievance v. James,* 385 Md. 637, 654, 870 A.2d 229, 239 (2005). Clear and

convincing evidence must support the findings of the hearing judge. *Attorney Grievance v. Zuckerman,* 386 Md. 341, 363, 872 A.2d 693, 706 (2005). The hearing judge's findings of fact are *prima facie* correct, and will not be disturbed unless clearly erroneous. *Attorney Grievance v. Pennington,* 387 Md. 565, 586, 876 A.2d 642, 654 (2005). We review the hearing judge's conclusions of law *de novo. Id.*

Bar Counsel argues that the hearing judge's findings as to Rule 8.4(c) are clearly erroneous because, in considering whether respondent violated the rules, the hearing judge impermissibly considered mitigation evidence offered by respondent. Citing *Attorney Grievance v. Zuckerman,* 386 Md. 341, 872 A.2d 693 (2005), Bar Counsel argues that facts tending to show mitigation may be used to determine the severity of the sanction, but may not be weighed in the balance of whether clear and convincing evidence was adduced to prove a violation of the rules.

■ Bar Counsel paints with too broad a brush. Evidence presented to the hearing judge may be relevant for different purposes. Evidence may be relevant as to a rule violation as well as to the appropriate sanction. For example, assuming that Bar Counsel alleged that an attorney engaged in fraudulent conduct, evidence as to an attorney's specific intent would be relevant and properly considered in assessing whether Rule 8.4(c) was violated. It would also be relevant in the consideration of the appropriate sanction.

■ In concluding that respondent did not violate Rule 8.4(c) and (d) by clear and convincing evidence, the hearing judge indicated that she considered respondent's intent, his explanation as to why he did not tell the client that he had lost the file and had taken no action on her case since July 1999, and the credibility of the witnesses, as well as the mitigating factors testified to by respondent and the psychiatric evidence presented by respondent. The hearing judge concluded that "[t]his court finds that [r]espondent did not violate Rule 8.4(c) and (d) in that he did not have sufficient intent rising to the level of dishonesty, fraud, deceit or misrepresentation to a

standard of clear and convincing evidence." Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The hearing judge was clearly erroneous because specific intent is not a necessary ingredient of dishonesty or misrepresentation.

Respondent was dishonest and misrepresented the truth when he told his client that he was working on the case when, in fact, he had lost the file and was not working on the case at all. In dealing with his client, respondent exhibited a lack of probity, integrity and straightforwardness, and, therefore, his actions were dishonest in that sense. *See Attorney Grievance v. Sheridan*, 357 Md. 1, 25–26, 741 A.2d 1143, 1156 (1999). Respondent confuses intent with motive. Although respondent may have acted in a certain manner because he was "embarrassed," he unquestionably told the client a lie. Accordingly, we sustain petitioner's exception to the hearing judge's finding as to Rule 8.4(c).

Respondent's admission as to violation of Rules 1.3, 1.4(a), and 3.2, along with the court's finding by clear and convincing evidence that respondent violated Rules 1.1, 1.2, 1.4(b), and this Court's holding that respondent violated 8.4(c), establish a violation of Rule 8.4(d). Behavior that may seriously impair public confidence in the entire profession, without extenuating circumstances, may be conduct prejudicial to the administration of justice. *See Attorney Grievance v. Childress*, 360 Md. 373, 381, 758 A.2d 117, 121 (2000). An attorney's material misrepresentation to the client, his failure to act on the client's case for over three years and failure to expedite litigation, to the client's detriment, is conduct prejudicial to the administration of justice. Failure to represent a client in an adequate manner and lying to a client constitute a violation of Rule 8.4(d). *See Attorney Grievance v. Zdravkovich*, 362 Md. 1, 31, 762 A.2d 950, 966 (2000); *Attorney Grievance v. Mooney*, 359 Md. 56, 83, 753 A.2d 17, 31 (2000); *Attorney Grievance v. Brugh*, 353 Md. 475, 478–79, 727 A.2d 913, 914–15 (1999).

### III.

We now turn to the appropriate sanction. The sanction for a violation of the Maryland Rules of Professional Conduct depends on the facts and circumstances of each case, including a consideration of any mitigating factors. *Attorney Grievance v. Zuckerman,* 386 Md. 341, 375, 872 A.2d 693, 713 (2005). In determining the appropriate sanction to be imposed, we are guided by our interest in protecting the public and its attendant confidence in the legal profession. *Attorney Grievance v. Pennington,* 387 Md. 565, 595, 876 A.2d 642, 660 (2005). The purpose of attorney disciplinary proceedings is not to punish the lawyer, but to protect the public as well as to deter other lawyers from violating the Rules of Professional Conduct. *Id.* at 596, 876 A.2d at 660. In order to protect the public, we impose a sanction commensurate with the nature and gravity of the violations and the intent with which the violations were committed. *See Attorney Grievance v. Goodman,* 381 Md. 480, 497, 850 A.2d 1157, 1167 (2004).

Bar Counsel maintains that disbarment is the appropriate sanction because respondent has engaged in a "continuing course and pattern of dishonest and deceitful conduct" absent any compelling, extenuating circumstances. Respondent contends that a suspension of between fifteen and thirty days would be appropriate.

Respondent testified at the hearing that he did not inform his client about the missing file when she asked about the status of her case "out of absolute embarrassment." He testified that he looked frequently for her file, but that he then "would get sidetracked with other stuff." Respondent acknowledged that the lost file and his substantial inaction was information "that the client needed to know so that she could make educated decisions about her case."

The hearing judge apparently considered this testimony credible, because she accepted respondent as credible in arriving at her conclusion that his conduct lacked "sufficient intent" rising to the level of dishonesty, fraud, deceit, or misrepresentation. Although we have found the hearing

judge erred in considering respondent's motive in determining whether respondent violated the rules, motive and lack of specific intent may be relevant when this Court considers the appropriate sanction. *See id.* at 497, 850 A.2d at 1167. We note that the hearing judge did not find that it was respondent's conscious objective to engage in dishonest conduct in violation of Rule 8.4(c) and (d). The hearing judge is in the best position to judge the credibility of the witnesses, and we accept her conclusion as to respondent's state of mind. Although respondent did act dishonestly and did misrepresent to his client, there is no evidence that he acted out of a fraudulent or selfish motive.

Respondent presents several factors in mitigation. He has fully cooperated with Bar Counsel. He has engaged in negotiations with the client's attorney regarding restitution, expressed great remorse to the client, and informed the hearing judge that he continues to work with the client's new counsel to settle the matter. Respondent presented psychiatric evidence. Dr. Janofsky opined that respondent suffered from personality trait vulnerabilities that may have interfered with respondent's ability to adequately resolve the problems that occurred with regard to Ms. Cohen's case. Dr. Janofsky further observed that respondent's failure to face the consequences of his action led to additional errors in judgment.

 Bar Counsel maintains that the appropriate sanction is disbarment, arguing that Dr. Janofsky's report does not constitute "compelling extenuating circumstances" necessary to justify a sanction less than disbarment for respondent's acts of intentional dishonesty. Bar Counsel points out that this incident is not the first disciplinary matter for respondent, and that respondent was suspended indefinitely in 1989, with the right to reapply after the expiration of ninety days.[2] As to the

---

2. In respondent's 1989 matter, alcohol was found to be a substantial cause of respondent's conduct. *See Attorney Grievance v. Nisbett,* 316 Md. 464, 472, 560 A.2d 18, 22 (1989) (noting that "[w]hen alcoholism is, to a substantial extent, the cause of the misconduct by an attorney, we view the misconduct in a somewhat different light").

client's injury flowing from respondent's conduct, her complaint against five defendants for $500,000 in damages, grounded in tort, was dismissed for lack of prosecution, at least in part due to respondent's inattentiveness and neglect. *See* Md. Rule 2–507.

At the outset, we note that lying to a client reflects most negatively on the legal profession. It goes without saying that a lawyer should not lie to the client about the status of the client's case. *See, e.g., Iowa Supreme Court Attorney Disciplinary Bd. v. Sotak,* 706 N.W.2d 385, 389 (Iowa 2005)(stating that "the practice of law simply cannot have people engaged in it who lie to their clients"); *Oklahoma Bar Ass'n v. Bolusky,* 23 P.3d 268, 273 (Okla.2001) (explaining that a lawyer should not lie to a client about the status of his or her case under a rule identical to MRPC 8.4(c)). We agree with the view expressed by the Supreme Court of New Jersey, stating that "[p]ublic confidence in the Bar is diminished when an attorney misrepresents to his client that his case is proceeding smoothly when it is not. Clients should not continue to suffer the consequences of being told their case is under control when it is not." *In the Matter of Grabler,* 114 N.J. 1, 552 A.2d 596, 600 (1989).

Every misrepresentation, however, does not call for disbarment. Writing for this Court, Judge Cathell discussed the reach of *Attorney Grievance v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001), as follows:

"We have not, however, always found disbarment to be the appropriate sanction where there is misrepresentation involved, especially where misappropriation of money was not involved. In *Attorney Grievance Commission v. Harrington,* 367 Md. 36, 785 A.2d 1260 (2001), we found an indefinite suspension to be the appropriate penalty for an attorney who had made one misrepresentation to one client but whose major transgression was his lack of cooperation with the Attorney Grievance Commission. We did not apply *Vanderlinde* as a bright-line rule, but applied the facts and circumstances of that case to determine the appropriate

sanction. What *Vanderlinde* holds is that 'ordinarily' disbarment will be the appropriate sanction when dishonesty is involved; however, we must still examine the facts, circumstances, and mitigation in each case. In *Harrington,* there was one instance of a degree of misrepresentation. There was, however, no pattern of a course of deceitful conduct over an extensive period of time sufficient, in our view to support a disbarment. The gravaman of the disciplinary proceeding was the attorney's lack of diligence and his lack of cooperation with bar counsel. There, we determined that the appropriate sanction was an indefinite suspension."

*Attorney Grievance v. Lane,* 367 Md. 633, 646–47, 790 A.2d 621, 628–29 (2002). *See also Attorney Grievance v. Jeter,* 365 Md. 279, 293–94, 778 A.2d 390, 398 (2001) (concluding that "given the court's findings that the respondent did not intend to defraud and that the respondent was remorseful, the appropriate sanction is an indefinite suspension with a right to reapply for admission to the Bar in six months"); *Iowa Supreme Court Attorney Disciplinary Bd. v. Sotak,* 706 N.W.2d 385 (Iowa 2005)(imposing suspension with no possibility of reinstatement before two years for misrepresentation of status of client's case); *Oklahoma Bar Ass'n v. Bolusky,* 23 P.3d 268 (Okla.2001)(attorney suspended for misrepresenting status of client's case); *In the Matter of Templin,* 101 N.J. 337, 502 A.2d 1 (1985) (attorney who lied to his client advising him the case was pending after default judgment had been entered for attorney's failure to answer interrogatories or respond to the court suspended for one year); *In the Matter of Loring,* 73 N.J. 282, 374 A.2d 466 (1977) (attorney who informed a client that an appeal from the trial court's dismissal of an action filed out of time was pending, when the appeal had been dismissed due also to late filing, suspended for six months).

Respondent's conduct related to one client and one case. Significantly, this is not a case of misappropriation of funds or criminal conduct. Considering all of the circumstances, we conclude that the appropriate sanction is an indefinite suspension from the practice of law.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THE COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF ATTORNEY GRIEVANCE COMMISSION AGAINST RICHARD J. REINHARDT.*

HARRELL, BATTAGLIA and GREENE, JJ. dissent.

Dissenting Opinion by HARRELL, J., which BATTAGLIA and GREENE, JJ., Join.

I respectfully dissent as to the sanction only. Rather than an indefinite suspension, disbarment is more appropriate.

The majority is correct in sustaining the Commission's exceptions. Thus, Reinhardt, for sanctioning purposes, stands adjudged as having violated the Maryland Rules of Professional Conduct ("MRPC") 1.1, 1.2, 1.3, 1.4(a) and (b), 3.2, and 8.4(c) and (d) in the course of his representation of Ms. Cohen.

Mitigation is analyzed traditionally by the Court in terms of the American Bar Association's (ABA) recommended standards. For example, in *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996), we stated:

> The mitigating factors listed in the ABA Standards include: absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses. (Footnote omitted)

*Id.; see also Attorney Grievance Comm'n v. Zuckerman,* 386 Md. 341, 375, 872 A.2d 693, 713 (2005). As such, "facts tending to show mitigation are used to determine the severity

of the sanction and not whether evidence adduced has established a violation of the rules by clear and convincing evidence." *Zuckerman*, 386 Md. at 368, 872 A.2d at 709.

We intentionally set a high bar for respondents in cases where the flagship violation is of MRPC 8.4(c) ("conduct involving dishonesty, fraud, deceit or misrepresentation"), such as the present one. That high bar is described best in *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001).

> In cases of intentional dishonesty, misappropriation cases, fraud stealing, serious criminal conduct and the like, we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and the MRPC.

*Vanderlinde* explained why the bar was set at that height:

> Unlike matters related to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character. Disbarment ordinarily should be the sanction for intentional dishonest conduct.

*Vanderlinde*, 364 Md. at 418, 773 A.2d at 488.

The majority in the present case points out, appropriately so, that we are not inflexible and unyielding in our application of *Vanderlinde*. The majority seeks to illustrate this by quoting dicta from *Attorney Grievance Comm'n v. Lane*, 367 Md. 633, 646–47, 790 A.2d 621, 628–29 (2002). *See* majority slip op. at 20. Interestingly, a unanimous Court in *Lane* nonetheless found disbarment to be the appropriate sanction where Lane made numerous misrepresentations to two clients about work he never did. We reached this result despite the mitigating circumstances of Lane's private practice inexperience at the time of the misconduct, his remorse, his coopera-

tion with Bar Counsel throughout the grievance process, and his showing, by virtue of his successful practice as a public defender and later a prosecutor following the misconduct, that he was no threat to the public. *Lane,* 367 Md. at 644, 790 A.2d at 627. It seemed that the Court was persuaded that disbarment, rather than suspension, was appropriate because of the repetition and materiality of the misrepresentations made by Lane while in private practice. *Lane,* 367 Md. at 647, 790 A.2d at 629.[1]

Not cited by the majority in the present case, but referred to in *Lane,* is *Attorney Grievance Comm'n v. Harrington,* 367 Md. 36, 785 A.2d 1260 (2001). In *Harrington,* the Court majority chose indefinite suspension over disbarment where Harrington violated: MRPC 1.3, 1.4(a) and (b), 1.16(d), 8.1(b), and 8.4(d) in one matter; MRPC 1.3, 1.4(a) and (b), 8.1(b), and 8.4(c) and (d) regarding a second complaint; and, MRPC 8.1(b) and 8.4(d) in a third case. The misconduct that led to Harrington being found in the one case to have violated MRPC 8.4(c) was "leading his client to believe he had filed a lawsuit on her behalf, when in fact he had not, and account[ing] for the delay because he was 'waiting for a court date.'" Harrington, 367 Md. at 48, 785 A.2d at 1267.

In settling on suspension in *Harrington,* the Court focused almost entirely on Harrington's multiple violations of MRPC 8.1, evinced by his "flagrant disregard of and response to communications from Bar Counsel." *Harrington,* 367 Md. at 50–51, 785 A.2d at 1268. The singular MRPC 8.4(c) violation was barely mentioned by the majority in *Harrington* in its brief analysis of the appropriate sanction. The lone dissenter in *Harrington,* Judge Raker, honed in on the 8.4(c) violation and urged disbarment on that basis. She stated there that "[a]n attorney who is dishonest and deceitful should not be practicing law." *Harrington,* 367 Md. at 53, 785 A.2d at 1269–70.

---

1. Lane violated MRPC 1.1, 1.2, 1.3, 1.4(a) and (b), and 8.4(a), (c), and (d) regarding one complainant. As to the other complainant, he violated MRPC 1.1, 1.2, 1.3, 1.4(a) and (b), 1.5(c), and 8.4(a), (c), and (d).

Putting aside for a moment the weight to be accorded Dr. Janofsky's 21 July 2005 written report[2] in the mitigation analysis in the present case, it seems to me that the remaining relevant mitigation factors are in a state of equilibrium. The hearing judge found that Reinhardt did not act with a selfish motive. Also, Reinhardt cooperated with Bar Counsel. He expressed remorse and worked with Ms. Cohen's new attorney to try and settle her restitution claim.[3] On the other side of the scale is Reinhardt's prior history with the Commission[4] and the fact that his misconduct in this case resulted in his client not being able to prosecute her tort claim where she sought $500,000 in damages. No other of the ABA factors are in play on this record.

Turning then to Dr. Janofsky's report, I find it to be of little service in the mitigation analysis. Dr. Janofsky's letterhead indicates that he was a Board-certified psychiatrist and neurologist. The opening paragraph of his report, however, states that Reinhardt's counsel in the present case engaged the doctor only "to assess whether Mr. Reinhardt was suffering from *psychological* factors that would impact negatively on his ability to practice law." (Emphasis in original). Having administered an MMPI–2 test[5] to Reinhardt, Dr. Janofsky

---

2. Dr. Janofsky did not supply live testimony before the hearing judge. Therefore, demeanor-based credibility could not have been a factor in the hearing judge's analysis.

3. In *Harrington,* the respondent attorney paid the particular complainant in the 8.4(c) violation case $35,000 in settlement of the loss she claimed as the result of his misconduct. Reinhardt, as he stands before us, offers only good intentions in similar regard.

4. In addition to noting his prior indefinite suspension, Dr. Janofsky's report, under the "Case Summary" heading, lists additional disciplinary contacts Reinhardt had with Petitioner. It was reported that he had been reprimanded in 1987 for neglect of a personal injury case. In August 2003, he received a warning from the Commission for lack of diligence in handling an estate.

5. The Minnesota Multiphasic Personality Inventory (MMPI)–2 is a frequently used clinical test to assess an individual's psychological personality profile.

opined that, although noting a few frailties, Respondent's "MMPI–2 diagnostic profile is just within normal range and was not diagnostically definitive." Continuing, Dr. Janofsky reported that Reinhardt's earlier alcohol abuse, occurring around the time of his ethical infractions leading to his indefinite suspension in the late 1980's, had abated. Respondent had remained sober since about 1990. Other than the alcohol abuse treatment, Reinhardt had "no psychiatric contacts."

The ultimate opinion expressed by Dr. Janofsky was, in pertinent part:

It is my opinion that around his alleged mismanagement of the Cohen matter, Mr. Reinhardt was *not* suffering from a diagnosable mental disorder. However, Mr. Reinhardt was suffering from personality trait vulnerabilities that may have interfered with his ability to adequately resolve the Cohen matter.

Personality traits are enduring lifelong patterns of perceiving, relating to and thinking about the environment and oneself and are exhibited in a wide range of important social and personal contexts. In Mr. Reinhardt's case, Mr. Reinhardt's tendency to misinterpret the motives of others and his rationalization of his own behavior in his way of avoiding his own feelings of hostility and affects his ability to deal with difficult matters. Additionally, his tendency to cover over and to deny the intensity of his resentments could have also exacerbated his problems in effectively dealing with his misplacement of the Cohen file.

Mr. Reinhardt's statements to both myself and to the Bar Counsel investigator that "embarrassment" led to his behaviors in the Cohen matter is a very accurate statement. Failure to face the consequences of misplacing the file led to further errors in judgment on Mr. Reinhardt's part.

Mr. Reinhardt's difficulties were further exacerbated by his lack of a secretary, associates, partners or any other support systems to help him more appropriately deal with case difficulties. (Emphasis in original).

I glean from Dr. Janofsky's report that, while Reinhardt may have had "issues" (as that term is used in common parlance), he was not mentally ill at the time of the misconduct in this case. Merely having "issues," however, is not sufficient since we decided *Vanderlinde* to dilute the ordinary sanction of disbarment for intentional dishonesty, deceit, or misrepresentation. The persuasive force of evidence required to satisfy the *Vanderlinde* threshold is

> there ... needs to be almost conclusive, and essentially uncontroverted evidence that would support a ... finding not only that the attorney had a serious and debilitating mental condition, but that the mental condition, in a sustained fashion, affected the ability of the attorney in normal day to day activities, such that the attorney was unable to accomplish the least of those activities in a normal fashion. Unless that standard is met the impairment is not the "root cause" of the misconduct.

*Vanderlinde*, 364 Md. at 418–19, 773 A.2d at 488. Dr. Janofsky's report does not supply a sufficient basis for mitigation. Accordingly, I give Dr. Janofsky's report little weight in the analysis of the appropriate sanction in this case.

Respondent engaged in intentional deceitful conduct, over an extended period of time, on multiple occasions. Embarrassment, however triggered, at having mislaid (or lost) Ms. Cohen's file is not an acceptable excuse for avoiding the client's many inquiries about the status of her case. Knowing that he had done nothing to effectuate service of process, or engaged in any other meaningful activity in furtherance of her case since filing suit on 30 July 1999, Reinhardt knew or should have known, given modern docket management practices and technologies used by clerk's offices statewide, that Md. Rule 2–507(c) (dismissal after one year for lack of prosecution) likely would be effectuated, irrespective of whether he actually received a copy of the formal Notice of Contemplated Dismissal from the clerk, sent on 27 September 2001. He made no effort at any time to reconstruct those parts of his file that could be found easily from other sources, such as obtaining a copy of the complaint from the court jacket, thus

enabling him to carry on the representation in a timely and diligent manner. Given Reinhardt's prior skirmishes with the disciplinary system over lack of diligence and other ethical obligations, I have no confidence in our ability to protect the public in the future from Reinhardt repeating with other clients the problems spread across this record or in demonstrating to other attorneys our lack of tolerance for this sort of conduct if we do not order disbarment in this case. The trust that must be at the center of the lawyer-client relationship is undermined otherwise. This Court has stated that intentional dishonest conduct by an attorney is "almost beyond excuse" and that disbarment should ordinarily be the sanction for such conduct. *Vanderlinde,* 364 Md. at 418, 773 A.2d at 488.

I would order disbarment of Respondent.

Judge BATTAGLIA and Judge GREENE join in the dissenting opinion.