658 A.2d 322

NATHAN CONKLIN, RICHARD CONKLIN, FRANK CONKLIN, III AND AUDREY CONKLIN, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF FRANK CONKLIN, DECEASED, PLAINTIFFS–RESPONDENTS, v. HANNOCH WEISMAN, P.C. AND CARLETON R. KEMPH, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 7, 1995—Decided May 23, 1995.

450

Before Judges BRODY, ARNOLD M. STEIN and PAUL G. LEVY.

*Laurence B. Orloff* argued the cause for appellants (*Orloff, Lowenbach, Stifelman & Siegel,* attorneys; *Mr. Orloff,* of counsel and on the brief; *Linda S. Moore,* on the brief).

*John B. Collins* argued the cause for respondents (*Bongiovanni, Collins & Warden,* attorneys; *Mr. Collins,* on the brief).

The opinion of the court was delivered by

BRODY, P.J.A.D.

This is an action for legal malpractice. We granted defendants' motion for leave to appeal from an order for a partial new trial. After an eleven-week trial, the jury found by its answers to special interrogatories that there was malpractice, but that the malprac-

tice did not proximately cause plaintiffs' losses. The trial judge concluded that the issue of proximate cause must be retried because his instructions may have misled the jury. We now affirm with some modification and a sharpening of the analysis.

Defendant Carleton Kemph, Esq. (hereinafter defendant), on behalf of his law firm, defendant Hannoch Weisman, P.C.,[1] represented a partnership (hereinafter plaintiffs), trading as Conklin Farms, in the sale of 117 acres of undeveloped land in Montville Township. One of the partners, Frank Conklin, has since died. His estate is represented in this action by its executrix. Plaintiffs were using the property profitably for mining sand and gravel when the Township indicated a willingness to rezone it to satisfy its legal obligation to provide space for low and middle income housing. The rezoning presented an opportunity to sell the property at a premium price.

Under the contract of sale, Longview Estates, the buyer, agreed to pay $12,000,000 for the property, $3,000,000 to be paid in cash at or before closing. The balance was to be secured by a purchase-money mortgage to plaintiffs. Plaintiffs agreed to subordinate their mortgage to one or more institutional construction-money mortgages and, by amendment to the contract, to a mortgage that secured a loan the buyer obtained to raise the cash due at closing. Plaintiffs were also secured by personal guarantees of the buyer's principals.

The sale closed without incident. The development, however, failed. The property was foreclosed by mortgage lenders who benefited from plaintiffs' subordination agreement. The foreclosure sale left no equity for plaintiffs. Meanwhile, plaintiffs' buyer and the guarantors all filed for bankruptcy protection. As a result, plaintiffs sustained a substantial loss.

The major claim in this action is that defendant's explanations to plaintiffs of the meaning and risks of the subordination agree-

---

[1] We will sometimes use "defendant" to refer to defendant's law firm, as will be evident from the context.

ment were inadequate and inaccurate. Plaintiffs also blamed defendant for failing to assure them more protection in the subordination agreement. They claim that defendant should have insisted during negotiations that there be a cap on the amount of the construction loans and that the property subject to the construction mortgages be limited to that portion of the property under immediate construction.

The jury absolved defendant and his firm of malpractice respecting the level of protection afforded plaintiffs in the subordination agreement. As to the claim of inadequate explanations, the jury answered "yes" to the following special interrogatory:

> Were Carleton R. Kemph and Hannoch Weisman negligent in representing the Conklin Farm partnership in connection with explaining subordination and the risks associated with subordination?

However, the jury answered "no" to the next interrogatory:

> Was the negligence of Carleton R. Kemph and Hannoch Weisman a proximate cause of damage suffered by the Conklin Farm partnership?

Most of the judge's charge on the issue of proximate causation, which included an explanation of "intervening cause," was abstract "boiler plate." Although technically correct, that portion of the charge had limited value to the jury because it did not apply difficult abstract concepts to the facts of the case. The trial judge concluded that he may have misled the jury in the brief portion of the charge in which he related these concepts to the facts of this case. That portion is as follows:

> Thus, for example, if you as jurors find that the proximate cause of plaintiffs' alleged losses was the bankruptcy of Longview Estates [and its principals], then you may not find Kemph liable for malpractice because his acts or omissions, even if you conclude they were deviations from accepted standards of practice, were not the proximate cause of the plaintiffs' losses.

The judge was concerned that the jury erroneously understood from this portion of the charge that defendant's malpractice could not be considered a proximate cause of plaintiffs' losses if those losses were also approximately caused by the bankruptcy or by the dramatic downturn in the real estate market that may have contributed to the development's failure.

The judge also concluded that a later addition to the charge, made the following day before the jury first began its deliberations, did not overcome the misleading effect of the original charge. The later charge added:

> However, the defendant is not relieved from liability for his negligence by the intervention of acts of third persons if those acts were reasonably foreseeable, such as the occurrence of the default, foreclosure and bankruptcy and the defendant failed to advise about the possibility of same. Neither is the defendant relieved from liability by the intervening acts of third persons where his own prior negligence was an efficient cause of the damage.

We agree with the trial judge's appraisal of the situation. In the absence of an express statement to the jury that the original charge was incorrect, the additional charge merely left the jury with unresolved conflicting instructions of the law in the critical portion of the charge that relates difficult abstract concepts to the facts of the case. *Ellis v. Caprice,* 96 *N.J.Super.* 539, 549–50, 233 *A.*2d 654 (App.Div.), *certif. denied,* 50 *N.J.* 409, 235 *A.*2d 901 (1967).

■ Aside from the foregoing, the essence of a coherent jury instruction on the issue of proximate causation in this kind of case was not recognized at trial. There is a distinction between whether defendant's conduct caused the foreclosure and bankruptcies, and whether it caused plaintiffs' losses resulting from those events. Although defendant's conduct obviously did not cause the foreclosure and bankruptcies, if plaintiffs' losses were caused by his failure to warn them adequately of these risks, defendant was negligent. That negligence does not turn on whether the risks were reasonably foreseeable when he was advising plaintiffs. After all, the whole point of a subordination is to assume risks that others are unwilling to assume regardless of whether those risks are likely to occur. Thus the supplemental charge erroneously instructed the jury to determine whether the risks "were reasonably foreseeable."

■ As an attorney, defendant had a legal duty to explain to plaintiffs the meaning of a subordination agreement and to alert

them of its risks, reasonably foreseeable or not. *See In re Loring,*
73 *N.J.* 282, 290, 374 *A.*2d 466 (1977) ("Inherent in that [attorney-client] trust is the duty to advise the client fully, frankly, and truthfully of all material and significant information."). Defendant did not deny that he had such a duty to his clients. His defense was that he had adequately discharged that duty. The jury found otherwise.

Thus, the foreclosure and bankruptcies cannot be viewed as intervening causes relieving defendant of liability even if they were not reasonably foreseeable. It was therefore error to instruct the jury that those risks may be so considered.

■ The underlying causation issue to be given the jury is whether plaintiffs would have agreed to the subordination if defendant had adequately explained to them its meaning and alerted them to the risks of foreclosure and bankruptcies they would thereby assume. A helpful analogy is to the issue of "informed consent" in medical malpractice cases. There, as here, we dispense with the "proximate" element of causation. Rather, the issue is whether a prudent patient would have declined to undergo the medical treatment if adequately informed of its risks. *Largey v. Rothman,* 110 *N.J.* 204, 215–16, 540 *A.*2d 504 (1988). That "objective" standard will also suffice in most legal malpractice settings. In such cases, the jury would be asked to decide whether a prudent client would have declined to enter into the transaction if adequately informed of its risks.

Here, however, there is an additional factor, not present in *Largey,* that requires application of a limited "subjective" standard, *i.e.,* regardless of what a prudent seller would have done, would *these* plaintiffs have declined to sell rather than undertake the risks of subordination. The Court in *Largey* rejected a subjective approach because in "hindsight" an injured patient would be too inclined to say without a reliable factual basis that he or she would have refused the treatment had there been adequate

warning of the risks. *Id.* at 216, .540 *A.2d* 504.[2]

However, a plaintiff should be able to overcome this implicit judicial charge of recent fabrication or improper motive with corroborating evidence of prior consistent statements. That approach is recognized in *N.J.R.E.* 607, which provides for the admission into evidence of a witness's prior consistent statements to overcome such a charge. Without relying solely on uncorroborated hindsight, the jury here could find from plaintiffs' prior statements that they would not have sold their property if advised of the risks of subordination. There was evidence that plaintiffs told defendant that they were generally content to forego the favorable sale price and continue to enjoy their generous mining profits from the property, and therefore they did not want to incur any risk in the sale. Thus, a jury could find that although no prudent seller, adequately informed of the risks of subordination, would decline to sell the property, plaintiffs stated before they knew the risks had occurred that they would not sell if it meant assuming those risks. Such a finding would establish a reliable causal link between defendant's malpractice and plaintiffs' losses.

■ If there is evidence at the retrial that before knowing the development was having financial difficulties, plaintiffs stated that they would not sell unless the sale was financially risk free, the judge should present the jury with three special interrogatories. The first will ask whether a prudent seller in plaintiffs' circumstances would refuse to sell the property if fully advised of the meaning and risks of the subordination. The second will ask whether plaintiffs stated before they knew the risks of subordina-

---

[2] In applying the prudent patient test, *Largey, supra,* 110 *N.J.* at 216, 540 *A.2d* 504, expressly followed *Canterbury v. Spence,* 464 *F.2d* 772 (D.C.Cir.), *cert. denied,* 409 *U.S.* 1064, 93 *S.Ct.* 560, 34 *L.Ed.2d* 518 (1972). That Circuit later noted a possible refinement of the test to include whether particular plaintiffs would have foregone the risky procedure where that issue "could be decided without reference to plaintiffs' speculation about what they would have done had they known of the risks." *Hartke v. McKelway,* 707 *F.2d* 1544, 1550–51 n.6 (D.C.Cir.), *cert. denied,* 464 *U.S.* 983, 104 *S.Ct.* 425, 78 *L.Ed.2d* 360 (1983).

tion had occurred that they were unwilling to accept such risks. The third will ask whether plaintiffs would have refused to sell the property had they been fully informed of the risks of subordination. The jury should be instructed to answer the second interrogatory only if its answer to the first interrogatory is "no" and to answer the third interrogatory only if its answer to the second interrogatory is "yes."

We do not rule out proximate cause as a factor in assessing the amount of plaintiffs' damages should defendant be found liable at the retrial.

■ The order appealed from provides in part, "a new trial shall be held with respect to such claim, limited to the issues of proximate cause, *comparative and/or negligence of plaintiffs* and damages; *the issue of the defendants negligence already having been determined on this claim.*" The trial judge interlined the emphasized portions in the form of order. Defendant argues that if there is a retrial, all issues, including his and plaintiffs' negligence, must be retried. We disagree.

■ Issues of negligence, comparative negligence and proximate cause must be retried together unless it clearly and convincingly appears that an issue unaffected by error "is entirely distinct and separable" from the issues that must be retried. *Beggs v. Pasalano,* 14 *N.J.Super.* 549, 552, 82 *A.*2d 640 (App.Div.1951).

Here, the issue of negligence turned on whether the jury accepted defendant's evidence or accepted plaintiffs' evidence as to whether defendant had adequately explained to plaintiffs the meaning of subordination and informed them of its risks. The jury's rejection of defendant's evidence is entirely distinct and separable from the issue of causation, particularly in light of our reduction of that issue to causation in fact rather than proximate cause.

The issue of plaintiffs' negligence was not clearly defined in the record. Defendant's attorney made no reference to it in his summation and does not describe plaintiffs' negligence in his brief.

The only reference in the jury charge to plaintiffs' negligence is as follows:

[D]efendants have charged the plaintiffs with negligence in that, among other things, (a), they signed the contract without reading it, or (b), they signed the contract after reading it but failed to advise defendant Kemph that they did not understand the language on subordination, and failed sufficiently with the exercise of reasonable diligence to seek out an explanation from the defendant Kemph.

The jury was asked the following special interrogatory on the point:

Were any of the Conklins negligent in failing to understand the meaning of subordination and the risks associated with subordination?

The jury did not reach that interrogatory after finding that defendant's negligence was not a proximate cause of plaintiffs' losses.

Plaintiffs cannot be found negligent for failing to understand the meaning and risks of subordination where the jury has found that defendant negligently failed to provide an explanation that would have given them that understanding. Although it may be that one or more of the plaintiffs could have told defendant that they did not understand the meaning of subordination, they cannot be charged with knowing the importance or significance of their ignorance when the jury has found that defendant was negligent in failing to explain subordination and its risks to them. Plaintiffs' negligence is not an issue in this case.

Except for the elimination of plaintiffs' negligence as an issue, the order appealed from is affirmed. The trial judge will be guided by the analysis herein in retrying the remaining issues.