**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1540-15T1

BRUCE STEVENS,

    Plaintiff-Appellant,

v.

MARY K. GONZALEZ AND ADRIAN
K. GONZALEZ,

    Defendants-Respondents.

_____

Argued January 19, 2017 — Decided June 13, 2017

Before Judges Fuentes, Simonelli and Gooden
Brown.

On appeal from the Superior Court of New
Jersey, Law Division, Sussex County, Docket
No. L-649-13.

Richard A. Grodeck argued the cause for
appellant (Piro, Zinna, Cifelli, Paris &
Genitempo, LLC, attorneys; Mr. Grodeck, on the
briefs).

Raymond Kramkowski argued the cause for
respondents (Law Office of Viscomi & Lyons,
attorneys; Christopher S. Byrnes, on the
brief).

PER CURIAM

In this automobile negligence action, plaintiff Bruce Stevens appeals from a November 10, 2015 order[1] of the trial court denying his motion for a new trial following a jury verdict award of limited damages. Following a three-day trial, the jury found that plaintiff sustained non-permanent injuries resulting from a motor vehicle accident. As such, the jury awarded plaintiff $4125 in lost wages. Plaintiff argues that the limited jury award was a direct result of an erroneous and misleading jury instruction by the court, causing sufficient confusion in the minds of the jurors to justify a new trial. We disagree, and for the reasons that follow, affirm.

## I.

We begin by noting that plaintiff's claims were subject to the verbal threshold of the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35. In the circumstances of this case, the "limitation on lawsuit option," N.J.S.A. 39:6A-8(a), required that plaintiff prove a permanent injury caused by the motor vehicle accident in order to recover non-economic personal injury damages such as emotional, mental and physical pain and suffering. Davidson v. Slater, 189 N.J. 166, 174 (2007).

---

[1] Although the order was signed on November 5, 2015, it was filed on November 10, 2015.

Plaintiff's personal injury action arose on December 15, 2012, when defendant Mary Gonzalez struck plaintiff's vehicle "head on," at the intersection of Route 517 and Grist Mill Lane[2] in Andover Township. Plaintiff refused medical care at the scene, citing his only injuries at the time as pain in his "left wrist" and "left foot primarily." However, when the pain "increased throughout the night[,]" plaintiff went to Hackettstown Regional Medical Center the following morning and reported having "pain throughout [his] upper body" and "shoulders[.]" At the hospital, plaintiff was diagnosed with sprains to his left wrist and left foot as well as a fractured sternum.

A few days later, plaintiff saw an orthopedic surgeon who confirmed the hospital's diagnosis of a fractured sternum. Although the sprains and fractured sternum healed completely after approximately eight to nine weeks, plaintiff continued to feel pain. In January 2013, plaintiff began seeing Dr. Michael Gutkin, a physiatrist, who has been his treating physician since the accident. On December 2, 2013, plaintiff filed a personal injury lawsuit and requested a jury trial, alleging he sustained permanent

---

[2] Although the street was referred to as Route 613 by other witnesses, Route 517 and Route 613 are the same street.

A-1540-15T1

injuries as a result of the accident caused by defendant's negligent operation of her vehicle.[3]

Plaintiff presented his case at a trial conducted on September 16, 17, and 21, 2015, during which the State trooper who responded to the accident scene testified that defendant admitted to him "it [was her] fault, [she] just didn't see [plaintiff] coming." At the close of defendant's case, on plaintiff's motion, the court granted a directed verdict on liability, finding that defendant's negligence caused the accident and that defendant was 100% at fault. R. 4:40-1. As a result, the court determined that the case would proceed on the issue of damages only. The jury was tasked with deciding whether plaintiff sustained permanent injury resulting from the accident, and if so, determining the amount of money damages plaintiff was entitled to recover.

Plaintiff testified that he suffers from constant pain on a daily basis in his neck, shoulders, "arms and into [his] hands" that worsens over time. According to plaintiff, he experiences "severe headaches" and numbness in his "arms" and "hands" after about twenty to forty-five minutes of use. He explained that the pain in his hands and arms affects his ability to engage in activities he once enjoyed, including playing with his grandson

---

[3] In his complaint, plaintiff did not allege any preexisting condition or other disability that was aggravated by the accident.

and traveling. Plaintiff also testified that, since the accident, he has not returned to work as an excavator due to his pain and because he is not permitted to operate machinery while on narcotic medication. Plaintiff reported a net income of $9000 in 2012, which was the last year he worked.

Plaintiff acknowledged having multiple surgeries in the past, including spinal surgery in 1977 and two prior shoulder surgeries in 2009 and 2010. In addition, in 2011, to address pain in his neck, plaintiff had a " radiofrequency ablation" which alleviated all of his neck pain and allowed him to resume working. According to plaintiff, after the ablation treatment in 2011, he had no neck pain until the accident.

In addition to testifying, plaintiff presented the testimony of Dr. Gutkin, a qualified expert in physical medicine and rehabilitation, to prove his damages. Dr. Gutkin testified that plaintiff sustained a "sternal fracture, pinched nerve of sorts due to unknown etiology, but . . . probably a disk bulge or herniation" due to the accident. According to Dr. Gutkin, plaintiff's post-accident MRI revealed "multiple bulges, most significant being . . . C-2, C-3, C-4, C-5, C-6, [and] C-7," and plaintiff's EMG confirmed "pinched nerves in the neck, both sides[.]" Dr. Gutkin acknowledged that plaintiff had "preexisting pain in the neck from the joints[,]" which had responded to

treatment in the past. Comparing plaintiff's pre-accident MRI to his post-accident MRI, Dr. Gutkin testified "there is definite worsening of the film in the 2011 pre accident to the 2013 film[.]" Dr. Gutkin concluded that "back in 2011 he didn't have a pinched nerve and the joints . . . were a factor back in 2011, but were not bothering him up until the accident."

Dr. Gutkin treated plaintiff's injuries through several mediums, including physical therapy, chiropractic care, cervical epidural shots, facet block injections, and radiofrequency ablation; none of which provided permanent relief. To manage his pain, Dr. Gutkin prescribed plaintiff "anti-inflammatories[,]" "painkillers[,]" "muscle relaxers[,]" "steroids[,]" and sleep aids. Dr. Gutkin testified "with the severe force that he had on the sternum, I think that the force on the joints probably created some cartilage damage in the joints that is not responding to our treatments." Dr. Gutkin diagnosed plaintiff with "cervical radiculopathy which is the pinched nerve probably coming from the disk itself." Dr. Gutkin concluded that in his "medical opinion[,]" plaintiff suffers from "facet injury and cartilage damage" which are "100 percent permanent" because "cartilage doesn't regenerate." According to Dr. Gutkin, at present, "[plaintiff] does not have full range of motion in his neck[,]" and plaintiff's cervical spine will never function normally again.

A-1540-15T1

In opposition, the defense medical expert, Dr. Edward Decter, an orthopedic surgeon, conducted an independent evaluation of plaintiff for trial.[4] Although Dr. Decter agreed with Dr. Gutkin that plaintiff had a preexisting condition with his cervical spine, his examination revealed that plaintiff did not have "any medical or neurogenic abnormalities." After administering several tests during his examination of plaintiff, including range of motion and reflex tests, Dr. Decter concluded that the results were normal and plaintiff displayed "no neurological deficits."

Dr. Decter reviewed plaintiff's medical records from the hospital visit following the accident to plaintiff's first visit to the orthopedic surgeon and found no indication of plaintiff complaining of neck pain from the accident. According to Dr. Decter, "if there was acute bulging disk that occurred as a result of this accident . . . that pain would have been described to the emergency room . . . doctors and nurses," and on the first visit to the orthopedic surgeon two weeks later.

Dr. Decter opined that, as a result of the accident, plaintiff "sustained a cervical sprain superimposed on degenerative discogenic disease" that did not constitute "a permanent

---

[4] Dr. Decter testified that in New Jersey, independent medical evaluations are called "medical legal evaluations where there is no doctor patient relationship."

injury[.]" Dr. Decter explained that a cervical sprain is where "you get hit" and "strain muscles in your neck." As to plaintiff's complaint of a loss of bodily function, Dr. Decter testified that he did not believe plaintiff "sustain[ed] a loss of bodily function to his cervical spine[,]" as "[t]he sternal fracture was nondisplaced and healed."

During the jury charge conference, plaintiff's counsel provided the court with a suggested jury charge and requested the court to modify "certain provisions" of the model jury charge to "customize[]" it "to the facts." Defense counsel vehemently objected and requested that the court instruct the jury on aggravation of a preexisting condition in accordance with <u>Model Jury Charge (Civil)</u>, 8.11F, "Aggravation of the Preexisting Disability" (1997), which reads in pertinent part:

> If you find that [plaintiff's] preexisting illness/injury(ies)/condition was not causing him/her any harm or symptoms at the time of the accident, but that the preexisting condition combined with injuries incurred in the accident to cause him/her damage, then [plaintiff] is entitled to recover for the full extent of the damages he/she sustained.

The court instructed the jury, in relevant part, as follows:

> In this case the plaintiff has presented evidence and made arguments that a condition that he had before the accident is in affect [sic] a preexisting injury which was made further damaged by the happening of the

accident for which he seeks monetary compensation. In other words, the plaintiff here has claimed that he was -- he had prior injury or condition and that it was asymptomatic, it wasn't giving him any problem until this accident took place. In such a case a plaintiff . . . if they are able to demonstrate by a preponderance of the evidence that the accident caused these injuries is entitled to recover not only for the trauma surrounding this accident but also that which may have been made worse by the happening of the accident. So, the plaintiff may be entitled to monetary damages for that injury.

Obviously, the defendants in this case are not responsible for any preexisting injury in and of itself. You may not award any money in this case for damages attributable solely to the preexisting condition. . . .

To the extent that this preexisting injury was not causing plaintiff any harm or symptoms at the time of the accident, if the plaintiff shows by a preponderance of the evidence that as a result these injuries were made aggravated or more severe, then the plaintiff may be entitled to recover monetary damages due to an aggravation or worsening of that preexisting condition, but only to the extent of that aggravation. Plaintiff has the burden of proving what portion of his condition is due to the preexisting injury.

After plaintiff's counsel brought the error in the charge to the court's attention, the court re-charged the jury with the following instruction:

If you find that [plaintiff's] preexisting condition as claimed was not causing him any harm or symptoms at the time of the accident but that the preexisting condition combined with injuries incurred in

9                                                        A-1540-15T1

the accident to cause him damage, then
[plaintiff] is entitled to recover for the
full amount of the damages he sustained.

There were no objections to the jury charge. The jury returned a verdict for plaintiff on September 22, 2015, awarding him $4125 in lost wages. The jury determined that plaintiff's injuries stemmed from the accident, but were not permanent. Thereafter, plaintiff filed a motion for a new trial, which the court denied by order dated November 5, 2015. This appeal followed.

On appeal, plaintiff raises the following points for our consideration:

POINT I

THE JURY INSTRUCTIONS WERE HOPELESSLY
AMBIGUOUS AND IN THE INTEREST OF JUSTICE A NEW
TRIAL MUST BE GRANTED.

POINT II

THE TRIAL COURT ERRED IN REFUSING TO GRANT A
NEW TRIAL.

II.

"A jury verdict, although not sacrosanct, is entitled to great deference." City of Long Branch v. Jui Yung Liu, 203 N.J. 464, 492 (2010); see also Lockley v. Turner, 344 N.J. Super. 1, 13 (App. Div. 2001) (holding that the jury's fact-finding function deserves a high degree of respect and judicial deference), aff'd in part and modified in part, 117 N.J. 413 (2003). Under Rule 2:10-1, this court can only reverse a trial court's denial of a

motion for a new trial where "it clearly appears that there was a miscarriage of justice under the law."  "The inquiry requires employing a standard of review substantially similar to that used at the trial level, except that the appellate court must afford 'due deference' to the trial court's 'feel of the case,' with regard to the assessment of intangibles, such as witness credibility."  Jastram v. Kruse, 197 N.J. 216, 230 (2008) (quoting Feldman v. Lederle Labs., 97 N.J. 429, 463 (1984)).

An erroneous jury charge is cognizable on a motion for a new trial.  It is well established that a proper jury charge is essential to a fair trial.  Reynolds v. Gonzalez, 172 N.J. 266, 288 (2002); Navarro v. George Koch & Sons, Inc., 211 N.J. Super. 558, 570 (App. Div.), cert. denied, 107 N.J. 48 (1986).  "The jury charge 'should set forth an understandable and clear exposition of the issues.'"  Mogull v. Cb Commercial Real Estate Grp., 162 N.J. 449, 464 (2000) (quoting Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 210 (1984)).  Our Supreme Court has "instructed that '[j]ury charges must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them[.]"  Wade v. Kessler Inst., 172 N.J. 327, 341 (2002) (quoting Velazquez v. Portadin, 163 N.J. 677, 688 (2000)).

11

Thus, when examining whether mistakes in a jury charge require intervention, we generally will not disturb a jury verdict based upon a trial court's error "where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect." Fischer v. Canario, 143 N.J. 235, 254 (1996) (citing Latta v. Caulfield, 79 N.J. 128, 135 (1979); Jurman v. Samuel Braen, Inc., 47 N.J. 586, 592 (1966)). Here, plaintiff did not object to the final charge as required under Rule 1:7-2. Pursuant to Rule 2:10-2, we shall disregard "[a]ny error or omission . . . unless it is of such a nature as to have been clearly capable of producing an unjust result." As such, an erroneous charge not objected to will be upheld if it is incapable of producing an unjust result and does not prejudice any substantial rights. Boryszewski v. Burke, 380 N.J. Super. 361, 374 (App. Div. 2005), certif. denied, 186 N.J. 242 (2006).

Plaintiff contends that the court provided an erroneous jury charge on aggravation of a pre-existing condition and, therefore, should have granted his motion for a new trial. We are somewhat hampered by the court's failure to articulate its reasons for entering the November 5, 2015 order. We have only the order without any oral argument or an analysis of the facts or law upon which the court's decision may have been based. Rule 1:7-4(a)

12

requires that a court "find the facts and state its conclusions of law . . . on every motion decided by a written order that is appealable as of right[.]" Our Supreme Court has recognized that the failure to comply with this obligation "'constitutes a disservice to the litigants, the attorneys and the appellate court.'" Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (quoting Kenwood Assocs. v. Bd. of Adjustment Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion. In the absence of reasons, we are left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). While we would ordinarily "remand for an exposition of the judge's reasoning[,] . . . because the record overwhelmingly demonstrates the absence of any factual or legal basis for [granting the motion,]" we will independently evaluate the sufficiency of the court's decision to deny the motion for a new trial. In re Farnkopf, 363 N.J. Super. 382, 390 (App. Div. 2003).

Plaintiff asserts that the charge on aggravation of a pre-existing condition was an "absolute misstatement of the law," and the court's additional instruction to correct the error was insufficient because it was unaccompanied by an explanation. Plaintiff argues that the jury's verdict demonstrates that the

jury was "confused by the charge and did not understand that an aggravated, previously asymptomatic, injury is an injury for which the plaintiff is entitled to fully recover damages." Although we agree that the original charge on aggravation of a pre-existing condition was erroneous, and it may have been beneficial if the court had made "an express statement to the jury that the original charge was incorrect," Conklin v. Hannoch Weisman, P.C., 281 N.J. Super. 448, 454 (App. Div. 1995), modified, 145 N.J. 395 (1996), we review the jury instruction as a whole, not in isolation. Because the charge given by the court after counsel's prompting was correct and effective in providing the jury with the proper guidelines from which to render a verdict, the error was not of "such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2. Further, there was no "miscarriage of justice under the law" to justify reversing the court's denial of the motion for a new trial. R. 2:10-1.

Moreover, there is no evidence to support plaintiff's contention that the instruction caused the jury to be confused. Rather, the verdict demonstrates that the jury did not believe that plaintiff sustained a permanent injury. The issue of permanence was hotly contested throughout the trial with the parties presenting competing expert testimony. Plaintiff's expert, Dr. Gutkin, testified that plaintiff had asymptomatic

prior conditions and that the injuries plaintiff sustained in the accident caused permanent injury. In contrast, the defense expert, Dr. Decter, testified that his examination of plaintiff and review of plaintiff's medical records did not reveal any permanent injury attributable to the 2012 accident. It appears from the verdict that the jury was not convinced that plaintiff's injuries were of a permanent nature and was persuaded by the testimony of the defense expert. As we have held, it is within the jury's purview to reject or adopt any portion of an expert's testimony. Amaru v. Stratton, 209 N.J. Super. 1, 20 (App. Div. 1985) (citation omitted).

Had plaintiff been able to persuade the jury that his injuries sustained in the 2012 accident, which aggravated an asymptomatic preexisting condition, were permanent, then defendant would have been liable for such aggravating effects. However, it would be reasonable to conclude that even if the jury found plaintiff's asymptomatic preexisting condition aggravated by the accident, the jury may also have concluded that the aggravated condition did not constitute a permanent injury. Indeed, the jury would have had to first determine that plaintiff's injury was permanent before even addressing his entitlement to any recovery. Since the portion of the charge defining the threshold issue of permanency was correct and, in this case, dispositive, the erroneous charge on a

preexisting condition cannot constitute reversible error because it would only impact the entirely separate issue of damages. Cf. Tindal v. Smith, 299 N.J. Super. 123 (App. Div.), certif. denied, 150 N.J. 28 (1997) (holding that a clearly erroneous charge on one element of the cause of action will not constitute reversible error where the jury's finding as to another entirely separate element was independently dispositive of the cause of action and was correctly charged).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION